1 | **LEILA W. MORGAN**
Federal Defenders of San Diego, Inc.
2 | California State Bar No. 254945
225 Broadway, Suite 900
3 | San Diego, CA 92101-5030
(619) 234-8467/Fax: (619) 687-2666
4 | E-Mail:Leila_Morgan@fd.org

5 | Attorneys for Ms. Penuelas

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BARRY T. MOSKOWITZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 08CR1727-BTM |
| ) | |
| Plaintiff, ) | DATE: July 3, 2008 |
| ) | TIME: 1:30 P.M. |
| v. ) | |
| ) | NOTICE OF MOTIONS AND MOTIONS TO: |
| YOMAYRA PATRICIA PENUELAS ) | |
| ) | (1) DISMISS THE INDICTMENT DUE TO UNCONSTITUTIONALITY OF STATUTE |
| Defendant. ) | (2) DISMISS THE INDICTMENT FOR GRAND JURY VIOLATION; |
| ) | (3) COMPEL DISCOVERY; |
| ) | (4) PRESERVE EVIDENCE; AND |
| ) | (5) GRANT LEAVE TO FILE FURTHER MOTIONS |
| ) | |

TO:   KAREN HEWITT, UNITED STATES ATTORNEY, AND
      JOHN KRAEMER, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on July 3, 2008 at 1:30 p.m., or as soon thereafter as counsel may be heard, Yomayra Patricia Penuelas, by and through her attorneys, Leila W. Morgan, and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the following motions.

//
//
//
//

08cr1727-BTM

**MOTIONS**

Yomayra Penuelas, by and through her attorneys, Leila W. Morgan and Federal Defenders of San Diego Inc., asks this Court pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law, and local rules for an order to:

(1) Dismiss the Indictment Due to Unconstitutionality of the Statute
(2) Dismiss the Indictment for Grand Jury Violation;
(3) Compel Discovery;
(4) Preserve Evidence; and
(5) Grant Leave to File Further Motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

Respectfully submitted,

Dated: July 3, 2008

*s/ Leila W. Morgan*
**LEILA W. MORGAN**
Federal Defenders of San Diego, Inc.
Attorney for Ms. Penuelas

**LEILA W. MORGAN**
Federal Defenders of San Diego, Inc.
California State Bar No. 232874
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467/Fax: (619) 687-2666
E-Mail: Leila_Morgan@fd.org

Attorneys for Ms. Penuelas

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BARRY T. MOSKOWITZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 08CR1727-BTM |
| Plaintiff, | DATE: July 3, 2008<br>TIME: 1:30 P.M. |
| v. | |
| YOMAYRA PATRICIA PENUELAS, | MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF<br>MS. PENUELAS'S MOTIONS |
| Defendant. | |

**STATEMENT OF FACTS**[1]

On May 13, 2008, at approximately 2:50 p.m., Ms. Penuelas entered the United States through the Calexico, California West Port of Entry. She was the driver and sole occupant of a 2000 Chrysler 300M. She arrived at primary inspection, made a negative customs declaration and was referred to secondary inspection by Customs and Border Protections Officer Relente.

Secondary inspection of the vehicle was conducted by Customs and Border Protections Officer (CBPO) Ramos. CBPO Ramos alleges that Ms. Penuelas again made a negative customs declaration, stated she was the registered owner of the vehicle and that she had been in Mexico visiting family. A Human/Narcotics Detection Dog was then used to screen the vehicle. The dog alerted to the vehicle.

---

[1] Unless otherwise stated, the "facts" referenced in these papers come from government-produced discovery that the defense continues to investigate. Ms. Penuelas does not admit the accuracy of this information and reserves the right to challenge it at any time.

1  Following the alert on the vehicle, CBPO Ramos continued his inspection and eventually discovered
2  approximately 24 packages concealed in a non-factory compartment in the rocker panels of the vehicle. The
3  packages contained a substance that field tested positive for cocaine. The packages have a total combined
4  weight of approximately 26.56 kilograms of cocaine.

5  Ms. Penuelas was then placed under arrest, read her rights pursuant to Miranda and questioned
6  regarding the offense. Ms. Penulas spoke with the agents, and repeatedly told them that she did not know
7  about the drugs in the vehicle.

8  The January 2007 Grand Jury returned a two count indictment against Ms. Penuelas, charging her
9  with Importation of Cocaine, in violation of 21 U.S.C. §§ 952 and 960, and, Possession of Cocaine with
10 Intent to Distribute, in violation of 21 U.S.C. § 841.

**I.**

**THE COURT SHOULD DISMISS THE INDICTMENT BECAUSE 21 U.S.C. §§ 841 AND 960 ARE FACIALLY UNCONSTITUTIONAL; ALTERNATIVELY, THE COURT SHOULD REQUIRE THE GOVERNMENT TO PROVE THAT MS. PENUELAS KNEW THE QUANTITY AND TYPE OF CONTROLLED SUBSTANCE THAT HE ALLEGEDLY POSSESSED**

15 As the Court is fully aware of the issues in this context, Ms. Penuelas will be brief (but will submit
16 further briefing if the Court would like). First, the indictment should be dismissed because sections 841 and
17 960 of Title 21 are facially unconstitutional as they require a judge, rather than a jury, to determine the
18 weight and quantity of drug involved, which in turn determines the maximum (and minimum mandatory)
19 sentence. Second, if the Court disagrees with this, the government must establish *mens rea* (*i.e.*, knowledge)
20 with respect to drug type and quantity. Given this, the indictment must be dismissed because the
21 government likely failed to instruct the grand jury accordingly. Ms. Penuelas requests that the Court compel
22 production of the grand jury transcripts, pursuant to Rule 6(e)(3)(E)(ii), with respect to this motion.

**II.**

**THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE INSTRUCTIONS PROVIDED TO THE JANUARY 2007 GRAND JURY RUN AFOUL OF BOTH *NAVARRO-VARGAS* AND *WILLIAMS*.**

**A.    Introduction**

27 The indictment in the instant case was returned by the January 2007 grand jury. That grand jury was
28 instructed by the Honorable Larry A. Burns, United States District Court Judge on January 11, 2007. See

1    Reporter's Partial Transcript of the Proceedings, dated January 11, 2007, a copy of which is attached hereto

2    as Exhibit A. Judge Burns' instructions deviate from the instructions at issue in the major Ninth Circuit

3    cases challenging a form grand jury instruction previously given in this district in several ways.[2]

4    After repeatedly emphasizing to the grand jurors that probable cause determination was their sole

5    responsibility, see Ex. A at 3, 3-4, 5,[3] Judge Burns instructed the grand jurors that they were forbidden "from

6    judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a

7    federal law or should not be a federal law designating certain activity [as] criminal is not up to you." See

8    id. at 8. The instructions go beyond that, however, and tell the grand jurors that, should "you disagree with

9    that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even

10   though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence may

11   be insufficient.'" See id. at 8-9. Thus, the instruction flatly bars the grand jury from declining to indict

12   because the grand jurors disagree with a proposed prosecution.

13   Immediately before limiting the grand jurors' powers in the way just described, Judge Burns referred

14   to an instance in the grand juror selection process in which he excused three potential jurors. See id. at 8.

15       I've gone over this with a couple of people. You understood from the questions and answers
    that a couple of people were excused, I think three in this case, because they could not adhere
16       to the principle that I'm about to tell you.

17   Id. That "principle" was Judge Burns' discussion of the grand jurors' inability to give effect to their

18   disagreement with Congress. See id. at 8-9. Thus, Judge Burns not only instructed the grand jurors on his

19   view of their discretion; he enforced that view on pain of being excused from service as a grand juror.

20   In addition to his instructions on the authority to choose not to indict, Judge Burns also assured the

21   grand jurors that prosecutors would present to them evidence that tended to undercut probable cause. See

22   id. at 20.[4]

23

24      [2] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v.
Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-Vargas
25   II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I); United States v.
Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam).
26

27      [3] See also id. at 20 ("You're all about probable cause.").

28      [4] These instructions were provided in the midst of several comments that praised the United States
attorney's office and prosecutors in general.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence*.

Id. (emphasis added).[5]  The district court later returned to the notion of the prosecutors and their duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you." See id. at 27.

This motion follows.

**B.  *Navarro-Vargas* Establishes Limits on the Ability of Judges to Constrain the Powers of the Grand Jury.**

The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions given to grand jurors in the Southern District of California. See Navarro-Vargas II, 408 F.3d 1184. While the Ninth Circuit has thus far (narrowly) rejected such challenges, it has, in the course of adopting a highly formalistic approach[6] to the problems posed by the instructions, endorsed many of the substantive arguments raised by the defendants in those cases. The district court's instructions cannot be reconciled with the role of the grand jury as set forth in Navarro-Vargas II.

For instance, with respect to the grand jury's relationship with the prosecution, the Navarro-Vargas II majority acknowledges that the two institutions perform similar functions: "'the public prosecutor, in deciding whether a particular prosecution shall be instituted or followed up, performs much the same function as a grand jury.'" Navarro-Vargas II, 408 F.3d at 1200 (quoting Butz v. Economou, 438 U.S. 478, 510 (1978)). Accord Navarro-Vargas I, 367 F.3d at 900 (Kozinski, J., dissenting) (The grand jury's discretion in this regard "is most accurately described as prosecutorial."). See also Navarro-Vargas II, 408 F.3d at 1213 (Hawkins, J., dissenting). It recognizes that the prosecutor is not obligated to proceed on any

---

[5]  The "in most instances" language suggests that there may be some limit on this principle. Again, counsel has ordered the full transcript, and it will likely resolve the question posed in the instant footnote.

[6]  See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (criticizing the majority because "[t]he instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence.").

indictment or presentment returned by a grand jury, id., but also that "the grand jury has no obligation to prepare a presentment or to return an indictment drafted by the prosecutor." Id. See Niki Kuckes, The Democratic Prosecutor: Explaining the Constitutional Function of the Federal Grand Jury, 94 Geo. L.J. 1265, 1302 (2006) (the grand jury's discretion not to indict was "'arguably . . . the most important attribute of grand jury review from the perspective of those who insisted that a grand jury clause be included in the Bill of Rights'") (quoting Wayne LaFave et al., Criminal Procedure § 15.2(g) (2d ed. 1999)).

Indeed, the Navarro-Vargas II majority agrees that the grand jury possesses all the attributes set forth in Vasquez v. Hillery, 474 U.S. 254 (1986). See id.

> The grand jury thus determines not only whether probable cause exists, but also whether to "charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense -- all on the basis of the same facts. And, significantly, the grand jury may refuse to return an indictment even "'where a conviction can be obtained.'"

Id. (quoting Vasquez, 474 U.S. at 263). The Supreme Court has itself reaffirmed Vasquez's description of the grand jury's attributes in Campbell v. Louisiana, 523 U.S. 392 (1998), noting that the grand jury "controls not only the initial decision to indict, but also significant questions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision whether to charge a capital crime." Id. at 399 (citing Vasquez, 474 U.S. at 263).

Judge Hawkins notes that the Navarro-Vargas II majority accepts the major premise of Vasquez: "the majority agrees that a grand jury has the power to refuse to indict someone even when the prosecutor has established probable cause that this individual has committed a crime." See id. at 1214 (Hawkins, J. dissenting). Accord Navarro-Vargas I, 367 F.3d at 899 (Kozinski, J., dissenting); Marcucci, 299 F.3d at 1166-73 (Hawkins, J., dissenting). In short, the grand jurors' prerogative not to indict enjoys strong support in the Ninth Circuit. But not in Judge Burns' instructions.

**C.   The Instructions Forbid the Exercise of Grand Jury Discretion Established in Both *Vasquez* and *Navarro-Vargas II*.**

The Navarro-Vargas II majority found that the instruction in that case "leave[s] room for the grand jury to dismiss even if it finds probable cause," 408 F.3d at 1205, adopting the analysis in its previous decision in Marcucci. Marcucci reasoned that the instructions do not mandate that grand jurors indict upon every finding of probable cause because the term "should" may mean "what is probable or expected." 299

1  F.3d at 1164 (citation omitted). That reading of the term "should" makes no sense in context, as Judge
2  Hawkins ably pointed out. See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) ("The
3  instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or
4  obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence."). See
5  also id. ("The 'word' should is used to express a duty [or] obligation.") (quoting *The Oxford American*
6  *Diction and Language Guide* 1579 (1999) (brackets in original)).

7        The debate about what the word "should" means is irrelevant here; the instructions here make no
8  such fine distinction. The grand jury instructions make it painfully clear that grand jurors simply may not
9  choose not to indict in the event of what appears to them to be an unfair application of the law: should "you
10 disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against
11 indicting even though I think that the evidence is sufficient'...." See Ex. A at 8-9. Thus, the instruction
12 flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution. No
13 grand juror would read this language as instructing, or even allowing, him or her to assess "the need to
14 indict." Vasquez, 474 U.S. at 264.

15       Nor does the Navarro-Vargas II majority's faith in the structure of the grand jury a cure for the
16 instructions excesses. The Navarro-Vargas II majority attributes "[t]he grand jury's discretion -- its
17 independence -- [to] the absolute secrecy of its deliberations and vote and the unreviewability of its
18 decisions." 408 F.3d at 1200. As a result, the majority discounts the effect that a judge's instructions may
19 have on a grand jury because "it is the *structure* of the grand jury process and its *function* that make it
20 independent." Id. at 1202 (emphases in the original).

21       Judge Hawkins sharply criticized this approach. The majority, he explains, "believes that the
22 'structure' and 'function' of the grand jury -- particularly the secrecy of the proceedings and unreviewability
23 of many of its decisions -- sufficiently protects that power." See id. at 1214 (Hawkins, J., dissenting). The
24 flaw in the majority's analysis is that "[i]nstructing a grand jury that it lacks power to do anything beyond
25 making a probable cause determination ... unconstitutionally undermines the very structural protections that
26 the majority believes save[] the instruction." Id. After all, it is an "'almost invariable assumption of the law
27 that jurors follow their instructions.'" Id. (quoting Richardson v. Marsh, 481 U.S. 200, 206 (1987)). If that
28 "invariable assumption" were to hold true, then the grand jurors could not possibly fulfill the role described

in Vasquez.  Indeed, "there is something supremely cynical about saying that it is fine to give jurors erroneous instructions because nothing will happen if they disobey them."  Id.

In setting forth Judge Hawkins' views, Ms. Penuelas understands that this Court may not adopt them solely because the reasoning that supports them is so much more persuasive than the majority's sophistry.  Rather, he sets them forth to urge the Court *not to extend* what is already untenable reasoning.

Here, again, the question is not an obscure interpretation of the word "should", but an absolute ban on the right to refuse to indict that directly conflicts with the recognition of that right in Vasquez, Campbell, and both Navarro-Vargas II opinions.  Navarro-Vargas II is distinguishable on that basis, but not only that.

Judge Burns did not limit himself to denying the grand jurors the power that Vasquez plainly states they enjoy.  He also apparently excused prospective grand jurors who might have exercised that Fifth Amendment prerogative, excusing "three [jurors] in this case, because they could not adhere to [that] principle...."  See Ex. A at 8.  The structure of the grand jury and the secrecy of its deliberations cannot embolden grand jurors who are no longer there, likely because they expressed their willingness to act as the conscience of the community.  See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (a grand jury exercising its powers under Vasquez "serves ... to protect the accused from the other branches of government by acting as the 'conscience of the community.'") (quoting Gaither v. United States, 413 F.2d 1061, 1066 & n.6 (D.C. Cir. 1969)).  The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure," United States v. Williams, 504 U.S. 36, 50 (1992), and, here, Judge Burns has both fashioned his own rules and enforced them. The instructions here are therefore structural error.  See Navarro-Vargas II, 408 at 1216-17 (Hawkins, J., dissenting).  The indictment must be dismissed.

**D.    The Instructions Conflict With *Williams'* Holding that there Is No Duty to Present Exculpatory Evidence to the Grand Jury.**

In Williams, the defendant, although conceding that it was not required by the Fifth Amendment, argued that the federal courts should exercise their supervisory power to order prosecutors to disclose exculpatory evidence to grand jurors, or, perhaps, to find such disclosure required by Fifth Amendment common law.  See 504 U.S. at 45, 51.  Williams held that "as a general matter at least, no such 'supervisory' judicial authority exists."  See id. at 47.  Indeed, although the supervisory power may provide the authority

1  "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct
2  amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this
3  Court and by Congress to ensure the integrity of the grand jury's functions,'" id. at 46 (citation omitted), it
4  does not serve as "a means of prescribing such standards of prosecutorial conduct in the first instance." Id.
5  at 47 (emphasis added).  The federal courts possess only "very limited" power "to fashion, on their own
6  initiative, rules of grand jury procedure." Id. at 50.  As a consequence, Williams rejected the defendant's
7  claim, both as an exercise of supervisory power and as Fifth Amendment common law. See id. at 51-55.

8  Despite the holding in Williams, the instructions here assure the grand jurors that prosecutors would
9  present to them evidence that tended to undercut probable cause. See Ex. A at 20.

10  Now, again, this emphasizes the difference between the function of the grand jury and the
    trial jury.  You're all about probable cause.  If you think that there's evidence out there that
11  might cause you say "well, I don't think probable cause exists," then it's incumbent upon you
    to hear that evidence as well.  As I told you, in most instances, *the U.S. Attorneys are duty-*
12  *bound to present evidence that cuts against what they may be asking you to do if they're*
    *aware of that evidence*.
13

14  Id. (emphasis added).  Moreover, the district court later returned to the notion of the prosecutors and their
15  duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of
16  [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." See
17  id. at 27.

18  This particular instruction has a devastating effect on the grand jury's protective powers, particularly
19  if it is not true.  It begins by emphasizing the message that Navarro-Vargas II somehow concluded was not
20  conveyed by the previous instruction: "You're all about probable cause." See Ex. A at 20.  Thus, once again,
21  the grand jury is reminded that they are limited to probable cause determinations (a reminder that was
22  probably unnecessary in light of the fact that Judge Burns had already told the grand jurors that they likely
23  would be excused if they rejected this limitation).  The instruction goes on to tell the grand jurors that they
24  should consider evidence that undercuts probable cause, but also advises the grand jurors that the prosecutor
25  will present it.  The end result, then, is that grand jurors should consider evidence that goes against probable
26  cause, but, if none is presented by the government, they can  presume that there is none.  After all, "in most
27  instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking
28  you to do if they're aware of that evidence." See id.  Thus, if the exculpatory evidence existed, it necessarily

would have been presented by the "duty-bound" prosecutor, because the grand jurors "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." See id. at 27.

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

> (1) I have to consider evidence that undercuts probable cause.
> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
> (3) Because no such evidence was presented to me, I may conclude that there is none.

Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation -- if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time -- and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

## III.

## MOTION TO COMPEL DISCOVERY

Ms. Penuelas moves for the production by the government of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any government agency. See generally Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

(1) The Defendant's Statements. The Government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the Government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the

Government agent; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) Arrest Reports, Notes and Dispatch Tapes. The defense also specifically requests that all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding his arrest or any questioning, if such reports have not already been produced in their entirety, be turned over to him. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). See also Loux v. United States, 389 F.2d 911 (9th Cir. 1968). Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant are available under Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(i). Preservation of rough notes is requested, whether or not the government deems them discoverable.

(3) Brady Material. Ms. Penuelas requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Impeachment as well as exculpatory evidence falls within Brady's definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

(4) Any Information That May result in a Lower Sentence Under The Guidelines. As discussed above, this information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). This request includes any cooperation or attempted cooperation by the defendant, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. Also included in this request is any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, or any other application of the Guidelines.

(5) The Defendant's Prior Record. Evidence of prior record is available under Fed. R. Crim. P. 16(a)(1)(B). Counsel specifically requests a complete copy of any criminal record.

(6) <u>Any Proposed 404(b) Evidence</u>.  Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests that such notice be given three weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) <u>Evidence Seized</u>. Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(C).

(8) <u>Tangible Objects</u>.  The defense requests, under Fed. R. Crim. P. 16(a)(1)(C) the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, photographs of buildings or places or copies of portions thereof which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant.

(9) <u>Evidence of Bias or Motive to Lie</u>.  The defense requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.  <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987); <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988).

(10) <u>Impeachment evidence</u>.  Ms. Penuelas requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant.  <u>See</u> Fed. R. Evid. 608, 609 and 613.  Such evidence is discoverable under <u>Brady v. Maryland</u>, <u>supra</u>.  <u>See</u> <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); <u>Thomas v. United States</u>, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

(11) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defense requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.  <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir. 1985).

(12) <u>Evidence Affecting Perception, Recollection, Ability to Communicate</u>.  Ms. Penuelas requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective

1  witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that
2  a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. United States
3  v. Strifler, 851 F.2d 1197 (9th Cir. 1988); Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980).

4      (13) Witness Addresses. The defense requests the name and last known address of each prospective
5  government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker,
6  716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United
7  States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979)) (defense has equal right to talk to witnesses). The
8  defendant also requests the name and last known address of every witness to the crime or crimes charged
9  (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness.
10 United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984).

11     (14) Name of Witnesses Favorable to the Defendant. Ms. Penuelas requests the name of any witness
12 who made any arguably favorable statement concerning the defendant or who could not identify him or who
13 was unsure of his identity, or participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288 (5th
14 Cir. 1968); Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir. 1980); Jones v. Jago, 575 F.2d 1164, 1168
15 (6th Cir.), cert. denied, 439 U.S. 883 (1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1979), cert.
16 denied, 444 U.S. 1086 (1980).

17     (15) Statements Relevant to the Defense. Ms. Penuelas requests disclosure of any statement that may
18 be "relevant to any possible defense or contention" that he might assert. United States v. Bailleaux, 685 F.2d
19 1105 (9th Cir. 1982). This would include Grand Jury transcripts which are relevant to the defense motion
20 to dismiss the indictment.

21     (16) Jencks Act Material. The defense requests all material to which Ms. Penuelas is entitled
22 pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial, including dispatch tapes. A
23 verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is
24 sufficient for the report or notes to qualify as a statement under § 3500(e)(1). Campbell v. United States,
25 373 U.S. 487, 490-92 (1963).

26     (17) Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant
27 requests all statements and/or promises, expressed or implied, made to any government witnesses, in
28

exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

(18) <u>Reports of Scientific Tests or Examinations</u>. Pursuant to Fed. R. Crim. P. 16(a)(1)(D), the defendant requests the reports of all tests and examinations conducted upon the evidence in this case. Including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

(19) <u>Henthorn Material</u>. The defense requests that the prosecutor review the personnel files of the officers involved in his arrests, and those who will testify, and produce to him any exculpatory information at least two weeks prior to trial and one week prior to the motion hearing. <u>See</u> <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). In addition, he requests that if the government is uncertain whether certain information is to be turned over pursuant to this request, that it produce such information to the Court in advance of the trial and the motion hearing for an <u>in</u> <u>camera</u> inspection.

(20) <u>Informants and Cooperating Witnesses</u>. Ms. Penuelas requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957). Mrs. Pozo-Campillo also requests disclosure of any information indicating bias on the part of any informant or cooperating witness. <u>Giglio v. United States</u>, 405 U.S. 150 (1972). Such information would include inducements, favors, payments, or threats made to the witness to secure cooperation with the authorities.

(21) <u>Expert Witnesses</u>. The defendant requests disclosure of any expert witnesses the government intends to call at trial and "a written summary of testimony that the government intends to use," including the "witnesses' opinions, the bases and the reasons for those opinions" and his or her qualifications. Fed. R. Crim. P. 16(a)(1)(E).

(22) <u>Residual Request</u>. The defense intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16. Ms. Penuelas

requests that the government provide him and his attorney with the above requested material sufficiently in advance of trial.

### IV.

### MOTION TO PRESERVE AND INSPECT EVIDENCE

Ms. Penuelas requests the preservation of all physical evidence in this case. This includes any evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government (or its private contractors) in this case. See United States v. Riley, 189 F.3d 802, 806-808 (9th Cir.1999). This request includes, but is not limited to: (1) the alleged contraband involved in the case, including all samples used to conduct all tests; (2) the containers or packaging within which the contraband was discovered; (3) the results of any fingerprint analysis; (4) the defendant's personal effects; (5) any videotapes/audiotapes capturing Ms. Penuelas in this matter; (6) recorded communications made by the government related to the above captioned case, e.g., radio communications post port inspection and pre-stop; (7) any evidence seized from the defendant or any third party; (8) the rough notes of the agents involved in the above captioned case; and (9) the vehicle driven by Ms. Penuelas. Ms. Penuelas requests that government counsel be ordered to notify the agencies and private contractors with custody of such evidence be informed of the Court's preservation order.

Further, Ms. Penuelas requests an order granting defense counsel and/or their investigators access to the alleged contraband and other evidence for the purposes of investigation, including inspection, photographing, and re-weighing of the alleged contraband if necessary. Fed. R. Crim. P. 16(a)(1)(C). A proposed Order will be provided for the convenience of the Court.

Ms. Penuelas requests that the alleged contraband be preserved until inspection and weighing by the defense is complete and that the remainder of the evidence in the case be preserved throughout the pendency of the case, including any appeals.

### V.

### REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

To date, Ms. Penuelas and defense counsel have received limited discovery from the government. It is anticipated that as new information comes to light, the defense will likely find it necessary to file further

motions. Therefore, it is requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

## VI.

## **CONCLUSION**

For the reasons stated above, Ms. Penuelas moves this Court to grant his motions.

Respectfully submitted,

Dated: July 3, 2008

/s/ Leila W. Morgan
**LEILA W. MORGAN**
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Penuelas

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: 08CR1727-BTM |
| ) | |
| ) | CERTIFICATE OF SERVICE |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| **YOMAYRA PENUELAS**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

    Counsel for Defendant certifies that the foregoing motion, is true and accurate to the best of her information and belief, and that a copy of the foregoing has been electronically served this day upon:

        John Kraemer
        Assistant United States Attorney
        880 Front Street
        San Diego, CA 92101

Dated: July 3, 2008
                                        s/ *Leila W. Morgan*
                                        **LEILA W. MORGAN**
                                        Federal Defenders of San Diego, Inc.
                                        225 Broadway, Suite 900
                                        San Diego, CA 92101-5030
                                        (619) 234-8467 (tel); (619) 687-2666 (fax)
                                        E-mail: Leila_Morganl@fd.org