1  KAREN P. HEWITT
United States Attorney
2  JOHN R. KRAEMER
Assistant U.S. Attorney
3  California State Bar No. 110756
Federal Office Building
4  880 Front Street, Room 6293
San Diego, CA 92101-8893
5  Telephone: (619) 557-2934
Email: john.kraemer@usdoj.gov
6
Attorneys for Plaintiff
7  United States of America

8
UNITED STATES DISTRICT COURT
9
SOUTHERN DISTRICT OF CALIFORNIA
10

11  UNITED STATES OF AMERICA,           )     Criminal Case No. 08CR1727-BTM
                                        )
12           Plaintiff,                 )     Date:  August 1, 2008
                                        )     Time:  1:30 p.m.
13      v.                              )
                                        )     GOVERNMENT'S RESPONSE AND
14                                      )     OPPOSITION TO DEFENDANT'S MOTIONS
                                        )     TO:
15  YOMAYRA PATRICIA PENUELAS  (1),     )
                                        )     (1)    DISMISS THE INDICTMENT DUE
16                                      )            TO UNCONSTITUTIONALITY
                                        )            OF THE STATUTE
17                                      )     (2)    DISMISS INDICT FOR GRAND
                                        )            JURY VIOLATION;
18           Defendant.                 )     (3)    COMPEL DISCOVERY;
                                        )     (4)    PRESERVE EVIDENCE;
19                                      )     (5)    GRANT LEAVE TO FILE FURTHER
                                        )            MOTIONS;
20                                      )
                                        )     TOGETHER WITH GOVERNMENT'S
21                                      )     REQUEST FOR RECIPROCAL DISCOVERY
                                        )
22  _____)

23
        The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P.
24
HEWITT, United States Attorney, and JOHN R. KRAEMER, Assistant United States Attorney, hereby
25
files its response and opposition to defendant's pre-trial motions, together with the Government's
26
request for reciprocal discovery.         .
27
//
28
//

I.

**STATEMENT OF FACTS**

**A.    CHARGES AND CASE STATUS**

On May 28, 2008, a federal grand jury returned a two-count indictment charging defendant Yomayra Patricia Penuelas (hereafter Penuelas) with Importation of Cocaine in violation of Title 21 U.S.C. Sections 952 and 960 (count one) and Possession of Cocaine with Intent to Distribute in violation of Title 21, U.S.C. Section 841(a)(1) (count two). [1] The amount of cocaine alleged in the indictment is 26.56 kilograms (58.43 pounds). The case is currently set for a motions hearing on August 1, 2008 at 1:30 p.m.

**B.    THE OFFENSE**

On May 13, 2008, at approximately 2:50 p.m., defendant Penuelas drove a 2000 Chrysler 300M bearing a California license plate from Mexico to lane nine of the Calexico West Port of Entry at Calexico, California.

At primary inspection, Penuelas presented a birth certificate and Nevada driver's license to United States Customs and Border Protection Officer ("CBPO") Mario Relente and said she was a United States citizen by birth. Penuelas made a negative customs declaration. After Officer Relente noticed that there was an "alert" for the vehicle on his computer, he referred the vehicle to secondary inspection.

CBPO Ramos approached the vehicle and Penuelas gave a negative customs declaration. Ramos asked Penuelas what she was doing in Mexico and Penuelas said she was "visiting family." Ramos asked Penuelas if she was the registered owner of the vehicle and she said, "yes." Ramos asked Penuelas how often she traveled to Mexico and Penuelas said "every day except Thursday." Ramos asked Penuelas to step out and in front of the vehicle so Ramos could conduct an inspection. Ramos removed the rocker panel cover on the driver's side of the vehicle and saw that "the holes where the cover plugs insert into had a metal plate underneath." Ramos also saw that the area had been recently painted. At that point, Ramos asked Canine Enforcement Officer Antonio Garcia to screen the vehicle with a canine. The canine alerted at the driver's side rocker panel of the vehicle. Upon further

---

[1]    The Indictment spells defendant's last name as Panuelas.

inspection, an access panel was discovered in the rear driver's side door rocker panel. A package was found and probed and found to test positive for cocaine. A total of 24 packages of cocaine were found.

United States Immigration and Customs Enforcement Special Agents Rafael Silva and Enrique Torregrosa responded to the port of entry. Agent Silva searched the vehicle for personal belongings but found none.

At approximately 5:00 p.m., during a video recorded interview, Agent Silva advised Penuelas of her <u>Miranda</u> rights in the English language as witnessed by Agent Torregrosa. Agent Silva read each of the rights and paused to ask Penuelas if she understood each right. Penuelas said that she understood each right and placed her initials next to each of the rights listed on a pre-printed form. Silva asked Penuelas to read the statement contained on the "Waiver of Rights" form out loud and asked Penuelas if she understood. Penuelas acknowledged her rights and agreed to answer questions. Agent Silva explained to Penuelas that was under arrest for the importation of a controlled substance and that it was important to make truthful statements.

Penuelas denied knowledge of the cocaine in the vehicle. Penuelas said she owned the vehicle for a little over one month and had purchased it in Mexicali from a man she only knew as "Mauricio". Penuelas said she paid Mauricio $4,000 for the vehicle but stilled owed him money. Penuelas said Mauricio was approximately 25 years of age, 5'5" tall, stocky build, bald, and had a mustache. Penuelas said she met Mauricio through her sister who she said she resided with in Calexico.

Penuelas thereafter said she would be honest. Penuelas said that she borrowed $1,300 from Mauricio and that Mauricio kept bugging her to repay the money. Penuelas said that she was only able to repay $300 and still owed $1,000. Penuelas said that Mauricio asked her if she could register a vehicle under her name and cross it a few times into the United States. Penuelas agreed to register the vehicle in her name. Penuelas said she never paid Mauricio any money for the vehicle and would only drive it across the border. Penuelas said Mauricio told her if she crossed the vehicle a few times he would leave her alone.

Penuelas said she was told the vehicle would be used to smuggle drugs into the United States.

1    Among other things, Penuelas said the first time she crossed the vehicle into the United States

2    that Mauricio was waiting for her at the Jack in the Box restaurant in Calexico.   At that time, Mauricio

3    drove Penuelas to her house and kept the vehicle.   Penuelas said Mauricio had the vehicle most of the

4    time.

5                                                          **II**

6                          **MEMORANDUM OF POINTS AND AUTHORITIES**

7        **A.      THE DRUG STATUTES ARE CONSTITUTIONAL**

8        Defendant contends that Title, 21, U.S.C. Section 841 and 960 are facially unconstitutional in

9    spite of the contrary ruling in United States v. Buckland, 289 F.3d 558 (9th Cir.) (en banc), cert.denied,

10   535 U.S. 1105 (2002).   She also contends, that if the Court disagrees, that the Government must

11   establish mens rea with respect to the drug type and quantity.   Defendant argues that the indictment

12   must therefore be dismissed because the "government likely failed to instruct the grand jury

13   accordingly." (Defendant's Memorandum at page 2.)   Defendant is incorrect.

14       The Ninth Circuit Court has already squarely and repeatedly rejected the claim that Apprendi

15   v. New Jersey, 530 U.S. 466 (2000) rendered the federal drug laws, including 21 U.S.C. §§ 841, 952

16   and 960, facially unconstitutional.   United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir.),

17   cert.denied, 126 S.Ct. 736 (2005), United States v. Jimenez, 300 F.3d 1166 (9th Cir. 2002); United

18   States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002); United States v. Carranza, 289 F.3d 634, 643 (9th

19   Cir. 2002); United States v. Buckland, 289 F.3d 558, 562 (9th Cir. 2002) (en banc); United States v.

20   Mendoza-Paz, 286 F.3d 1104, 1109-10 (9th Cir. 2002); United States v. Varela-Rivera, 279 F.3d 1174,

21   1175 n.1 (9th Cir. 2002).  Sections 841, 952 and 960 do not expressly commit the determination of drug

22   type and quantity to the judge. See Buckland, 289 F.3d at 565; Mendoza-Paz, 286 F.3d at 1110.  See

23   also Varela-Rivera, 279 F.3d at 1175 n.1 (recognizing that Buckland foreclosed the argument that 21

24   U.S.C. §§ 841, 952 and 960 are unconstitutional).

25       Penuelas argues that  the indictment must allege that the defendant knew the type and quantity

26   of drugs she possessed.   Defendant is incorrect.  "A defendant charged with importing or possessing

27   a drug is not required to know the type and amount of drug." United States v. Carranza, 289 F.3d 634,

28   644 (9th Cir. 2002).   "[A] defendant can be convicted under Section 841 and Section 960 if he believes

he has *some* controlled substance in his possession." Id., quoting United States v. Ramirez-Ramirez, 875 F.2d 772, 774 (9th Cir. 1989).    "Apprendi did not change the long established rule that the government need not prove that the defendant knew the *type* and *amount* of a controlled substance that he imported or possessed". Carranza, supra at 644.

B.    **THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED**

1.    **Introduction**

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 11, 2007. [Memorandum of Points and Authorities, pp. 2-9 (hereinafter "Memorandum").[2]  Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed.

In making his arguments concerning the two separate instructions Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures.  This is a practice the Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. ").  [Id.] Isgro reiterated:

_____

[2]    Defendant cites (but does not attach) a "Partial Transcript" of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted. [Appendix 1.] To amplify the record herein, we attaching a copy of the "Partial Transcript" Defendant refers to and are supplying a redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings.  [Appendix 2.]

[A] district court may draw on its supervisory powers to dismiss an indictment.   The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice."  Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.   Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added).  Concerning the second attacked instruction, in an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment.  [Memorandum p. 9 ("A grand jury so badly misguided is no grand jury at all under the Fifth Amendment").]  Concerning that kind of a contention Isgro stated:

[A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant."  Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).[3]

The portions of the two relevant instructions approved in Navarro-Vargas were:

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.   That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.   It is entirely proper that you should receive this assistance.  If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law,

_____

[3]     In Isgro the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries.  They did not prevail.  974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment."  (relying on Williams)).

then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[4]  408 F.3d at

1203 (footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy

or legal justification for the law;  it receives no briefs or arguments from the parties.   The grand jury

has little but its own visceral reaction on which to judge the 'wisdom of the law.'"  Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction,

the court stated:

> We also reject this final contention and hold that although this passage may
> include unnecessary language, it does not violate the Constitution.  The "candor,
> honesty, and good faith" language, when read in the context of the instructions as a
> whole, does not violate the constitutional relationship between the prosecutor and grand
> jury. . . .  The instructions balance the praise for the government's attorney by informing
> the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the
> prosecution and reminding them that the grand jury is "independent of the United States
> Attorney[.]"

408 F.3d at 1207.  Id.  "The phrase is not vouching for the prosecutor, but is closer to advising the grand

jury of the presumption of regularity and good faith that the branches of government ordinarily afford

each other."  Id.

## 2.    The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the

criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were
> excused, I think three in this case, because they could not adhere to the principle that I'm
> about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by
> congress; that is, whether or not there should be a federal law or should not be a federal
> law designating certain activity is criminal is not up to you.  That's a judgment that
> congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not
> to say "Well I'm going to vote against indicting even though I think that the evidence
> is sufficient" or "I'm going to vote in favor of even though the evidence may be
> insufficient."  Instead, your obligation is to  contact your congressman or advocate for
> a change in the laws, but not to bring your personal definition of what the law ought to
> be and try to impose that through applying it in a grand jury setting.

---

[4]    The Court acknowledged that as a matter of fact jury nullification does take place, and
there is no way to control it.  "We recognize and do not discount that some grand jurors might in fact
vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all
the reasons we have discussed, there is no post hoc remedy for that;  the grand jury's motives are not
open to examination."  408 F.3d at 1204 (emphasis in original).

1   Partial Transcript pp. 8-9.[5]

2          Defendant acknowledges that in line with <u>Navarro-Vargas</u>, "Judge Burns instructed the grand

3   jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress;

4   that is, whether or not there should be a federal law or should not be a federal law designating certain

5   activity [as] criminal is not up to you.'"  [Memorandum p. 3.]  Defendant notes, that the Court told the

6   grand jurors that, should "you disagree with that judgment made by Congress, then your option is not

7   to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm

8   going to vote in favor of even though the evidence maybe insufficient.'"  [Memorandum p. 3.]

9   Defendant contends that this addition to the approved instructions, "bar the grand jury from declining

10  to indict because the grand jurors disagree with a proposed prosecution."  [Memorandum p. 3.]

11  Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns when

12  he "referred to an instance in the grand juror selection process in which he excused three potential

13  jurors," which resulted in his "not only instruct[ing] the grand jurors on his view of their discretion; [but

14  his] enforc[ing] that view on pain of being excused from service as a grand juror."[6]  [Memorandum p.

15  3.]

16         In concocting his theory of why Judge Burns erred, Defendant posits that the expanded

17  instruction renders irrelevant the debate about what the word "should" means.  [Memorandum p. 6.]

18  Defendant contends, "the instructions bars the grand jury from declining to indict because they disagree

19  with a proposed prosecution."  [Memorandum p. 3.]  This argument mixes-up two of the holdings in

20  <u>Navarro-Vargas</u> in the hope they will blend into one.  They do not.

21         <u>Navarro-Vargas</u> does permit barring the grand jury from disagreeing with the wisdom of the

22  criminal laws.  The statement, "[y]ou <u>cannot</u> judge the wisdom of the criminal laws enacted by

23  Congress," (emphasis added) authorized by <u>Navarro-Vargas</u>, 408 F.3d at 1187, 1202, is not an

24

25         [5]     The Supplemental Transcript supplied herewith (Appendix 2) recounts the excusing of
    the three individuals.  This transcript involves the voir dire portion of the grand jury selection process,
26  and has been redacted,  to include redaction of the individual names, to provide only the relevant three
    incidents wherein prospective grand jurors were excused.  Specifically, the pages of the Supplemental
27  Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38,
    line 9 - page 44, line 17.

28         [6]     <u>See</u> Appendix 2.

expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in <u>Navarro-Vargas</u> in its discussion of another instruction wherein the term "should" was germane.[7] 408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found"). This other instruction bestows discretion on the grand jury not to indict.[8] In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

---

[7]     That instruction is not at issue here. It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[8]     The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in <u>United States v. Marcucci</u>, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

1

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.

2

3

4

> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

5

6

7

Partial Transcript pp. 3-4.

8

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.

9

10

11

> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

12

13

Partial Transcript p. 23.

14    While the new grand jurors were told by Judge Burns that they could not question the wisdom

15    of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not

16    to return an indictment per Navarro-Vargas. Further, if a potential grand juror could not be dissuaded

17    from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential

18    jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus,

19    there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising

20    its supervisory powers.

21    Further, a reading of the dialogues between Judge Burns and the three excused jurors found in

22    the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual

23    decision, that those three individuals should not serve on the grand jury because of their views. Judge

24    Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand

25    jurors, but merely bespeaks a reminder to the grand jury of their duties.

26    Finally, even if there was an error, Defendant has not demonstrated she was actually prejudiced

27    thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision

28

to indict was free from the substantial influence of [the misconduct]'--a dismissal is not warranted."

Isgro, 974 F.2d at 1094.

### 3.    The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office. . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Partial Transcript p. 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Partial Transcript p. 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[9]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.

> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

---

[9]    Just prior to this instruction, Judge Burns had informed the grand jurors that: [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause.  [Memorandum p. 8.]  Defendant then ties this statement to the later instruction which advised the grand jurors that they "can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'"  [Memorandum pp. 9.]

Defendant claims:

The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time -- and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented.  A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

[Memorandum pp.  9.]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[10]  (emphasis added)).  See also, United States v. Haynes, 216 F.3d 789, 798 (9th Cir.  2000) ("Finally, their challenge to the government's failure to

---

[10]     Note that in Williams the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury.  Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress,"  he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55.  See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir.  2000).  However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

08CR1727-BTM

1  introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation

2  to disclose 'substantial exculpatory evidence' to a grand jury."  (citing Williams) (emphasis added)).

3       However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns

4  was a member of the United States Attorney's Office, and made appearances in front of the federal grand

5  jury.[11]  As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual

6  ("USAM").[12]  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

12  (Emphasis added.)[13]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of

13  Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the

14  policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a

15  subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ."

16  (Emphasis added.)[14]

17

18  _____

19     [11]    He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

20     [12]    The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/ usam/index.html.
21

22     [13]    See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.
23

24

25     [14]    See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

26       Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery
27       in criminal cases. Nor does it provide defendants with any additional rights or remedies.

28

USAM 9-5.001, ¶ "E".  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

08CR1727-BTM

1    The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed

2   guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.

3   No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-

4   imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the

5   prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory

6   evidence exists.[15]  If it does exist, as mandated by the USAM, the evidence should be presented to the

7   grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by

8   an Office of Professional Responsibility investigation.  Even if there is some nefarious slant to the grand

9   jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because

10   there is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In

11   cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from

12   its investigation or from submissions tendered by the defendant.[16]  There is nothing wrong  in this

13   scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory

14   evidence, or even if some exculpatory evidence were presented, the evidence presented represents the

15   universe of all available exculpatory evidence.

16    Further, just as the instruction language regarding the United States Attorney attacked in

17   <u>Navarro-Vargas</u> was found to be "unnecessary language [which] does not violate the Constitution," 408

18   F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury

19   concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does

20   _____

21    [15]    Recall Judge Burns also told the grand jurors that:

22    [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown
       trial, you're likely in most cases not to hear the other side of the story, if there is another
23    side to the story.

24   Partial transcript p. 19.

25    [16]    Realistically, given "that the grand jury sits not to determine guilt or
       innocence, but to assess whether there is adequate basis for bringing a
26    criminal charge [i.e. only finding probable cause]," <u>Williams</u>, 504 U.S.
       at 51 (citing <u>United States v. Calandra</u>, 414 U.S. 338, 343-44 (1974)), no
27    competent defense attorney is going to preview the defendant's defense
       story prior to trial assuming one will be presented to a fact-finder.
28    Therefore, defense submissions to the grand jury will be few and far
       between.

1    not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit

2    while reviewing Williams established that there is nothing in the Constitution which requires a

3    prosecutor to give the person under investigation the right to present anything  to the grand jury

4    (including his or her testimony or other exculpatory evidence), and the absence of that information does

5    not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea that there

6    exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty on

7    United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant

8    since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed

9    policy.[17]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was

10   unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast

11   an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or

12   any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates

13   Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory

14   comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that

15   it stands between the government and the accused and is independent,"  which was also required by

16   Navarro-Vargas.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not

17   mean the instructions were constitutionally defective requiring dismissal of this indictment or any

18   indictment.

19        The "duty bound" statement constitutional contentions raised by Defendant do not indicate that

20   the "'structural protections of the grand jury have been so compromised as to render the proceedings

21   fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant

22   can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects

23   the fundamental fairness of the proceeding or if the independence of the grand jury is substantially

24   infringed."  Isgro, 974 F.2d at 1094 (citation omitted).  Therefore, this Indictment, or any other

25   indictment, need not be dismissed.

26   _____

27        [17]      The apparent irony is that although an Assistant U.S. Attorney will not lose a case for
                    failure to present exculpatory information to a grand jury per Williams, he or she could
28                  lose his or her job with the United States Attorney's Office for such a failure per the
                    USAM.

**C.     DEFENDANT'S DISCOVERY REQUESTS**

The following is the Government's response to defendant's discovery requests:

### 1.     Statements of Defendant

The Government will fully comply with Federal Rule of Criminal Procedure 16(a)(1)(A) and (B) by providing defendant statements.

### 2.     Arrest Reports, Notes, TECS records

The Government has provided the defendant with arrest reports.  Relevant oral statements of the defendant are included in the reports and materials already provided.  Agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

A defendant is not entitled to rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness.  United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992); United States v. Spencer, 618 F.2d  605 (9th Cir. 1980); see also United States v. Griffin, 659 F.2d 932 (9th Cir. 1981).

### 3.     Brady Material/information Material to Sentence

The Government will comply with its obligations under Brady v. Maryland, 373 U.S. 83  (1963) in providing information material to guilt or punishment.

### 4.     Defendants' Prior Criminal Records

The Government is unaware of any prior criminal record but will provide such records if they become known.

### 5.     404(b) Evidence

The Government will disclose 404(b) evidence, if any.

### 6.     Evidence Seized

The Government will comply with Federal Rule of Criminal Procedure 16(a)(1)(E) in allowing defendants  an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the Government, and which is material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at trial, or were obtained from or belong to the defendant, including photographs.

1    The Government, however need not produce rebuttal evidence in advance of trial. <u>United States</u>

2  <u>v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984), <u>cert</u>. <u>denied</u>, 474 U.S. 953 (1985).

3                      **7.      Preservation of Evidence**

4    The Government will preserve the evidence in this case**.**   The Government requests that it be

5  provided, in advance, a copy of any order it proposes that the Court sign regarding any re-weighing of

6  the drugs. (See defendant's Memorandum at p. 14).   Because the bulk narcotics evidence is typically

7  destroyed within a 60-day period, defense counsel should undertake any inspection of the narcotics

8  authorized by the Court without delay.  The Government will preserve any personal effects seized and

9  held as evidence.   Any personal effects that may have been returned to the defendant at the time of

10  booking would be in the control of the defendant.

11                      **8.      Tangible Evidence**

12    The Government will comply with Fed.R.Crim.P. 16(a)(1)(C) in providing defendants an

13  opportunity to inspect and copy the evidence.

14                    **9.      Evidence of Bias or Motive to Lie**

15    The Government will comply with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)

16  and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  The Government knows of no bias, prejudice or other

17  motivation to testify falsely or impairments of its witnesses, but will make appropriate disclosures if

18  such information should become known.  <u>See</u> <u>Napue v. Illinois</u>, 360 U.S. 264 (1959); <u>Mooney v.</u>

19  <u>Holohan</u>, 294 U.S. 103 (1935).

20                      **10.      Impeachment Evidence**

21    As noted above, the Government will comply with its obligations under <u>Brady v. Maryland</u>,  373

22  U.S. 83 (1963) and <u>Giglio v. United States</u>,  405 U.S. 150 (1972).

23    However, under <u>Brady v. Maryland</u>, 373 U.S.  83 (1963), and <u>United States v. Agurs</u>, 427 U.S.

24  97 (1976), the Government must only disclose <u>exculpatory</u> evidence <u>within</u> <u>its</u> <u>possession</u> that is

25  <u>material</u> to the issue of guilt or punishment.  <u>See</u> <u>also</u> <u>United States v. Gardner</u>, 611 F.2d 770, 774 (9th

26  Cir. 1980).

27    Under <u>Brady</u>, the suppression by the prosecution of evidence favorable to the accused violates

28  due process where the evidence is material to guilt or innocence.  <u>United States v. Bagley</u>, 473 U.S. 667

(1985).  Favorable evidence includes impeachment evidence.  United States v. Bagley, 473 U.S. 667 (1985).

Defendants are not entitled to all evidence which is or may be favorable to the accused or which pertains to the credibility of the Government's case.  As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980):

> [I]n response to a request for exculpatory evidence the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

Id. at 774-775.

Although the Government will provide conviction records, if any, which could be used to impeach a witness, the Government is under no obligation to turn over the criminal records of all witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976), cert. denied, 429 U.S. 1074 (1977).  When disclosing such information, disclosure need only extend to witnesses the Government intends to call in its case-in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

The Government will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.  Defendants are not entitled, however, to any and all evidence that a prospective witness is under investigation by federal, state or local authorities for misconduct.

**11.    Witness Addresses**

There is no requirement that the Government provide a defendant in a non-capital case with a list of witnesses it expects to call at the trial or their statements, and defendant's motion for such a list should be denied.

In United States v. Jones, 612 F.2d 453 (9th Cir. 1979), cert. denied, 455 U.S. 966 (1980), the Ninth Circuit stated:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the

Jencks Act, 18 U.S.C. Section 3500, or <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

### 12.    Name of Witnesses Favorable to Defendant/material Witness

The Government knows of no witnesses favorable to the defense. The Government will provide defendant the name of any such witnesses should they become known to the government.

### 13.    Statements Relevant to Defense

The Government will provide defendant with statements relevant to the defense.

### 14.    Jencks Act Material

The Government will comply with its obligations pursuant to the Jencks Act.

### 15.    Giglio Information

The Government will comply with its obligations pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

### 16.    Scientific Tests/expert Summaries

The Government will comply with Rule 16(a)(1)(F) in providing reports of tests and examinations and summaries of expert testimony, if any pursuant to Rule 16(a)(1)(G).

### 17.    Personnel Files and Related Information

The prosecutor assigned to the case is under no obligation to personally examine the personnel files of testifying agents and defendant's request in this regard must be denied.   <u>United States v. Jennings</u>, 960 F.2d 1488 (9th Cir. 1992) (see defendant Penuelas' motion at p. 13).   Rather, the Government will comply with its obligations under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) pursuant to established procedures.

### 18.    Expert Witnesses

The Government will comply with Rule 16(a)(1)(G) pertaining to expert witnesses.

### 19.    Informants and Cooperating Witnesses

Counsel for the Government is currently unaware of any informants in this matter but will make appropriate inquiries in this regard.

### 20.    Grand Jury Testimony

The Government opposes defendant's request for grand jury testimony except to the extent such disclosure is required under the Jencks Act. (See defendant's Memorandum at p. 12).

1    **D.    LEAVE TO FILE FURTHER MOTIONS**

2        The United States defers to the Court whether to allow the filing of further motions by defendant

3    Penuelas.

4                                **IV**

5        **GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

6    **A.    RULE 16(B)**

7        The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that

8    defendant permit the United States to inspect, copy, and photograph any and all books, papers,

9    documents, photographs, tangible objects, or make copies of portions thereof, which are within the

10   possession, custody or control of defendant and which defendant intends to introduce as evidence in his

11   case-in-chief at trial.

12       The United States further requests that it be permitted to inspect and copy or photograph any

13   results or reports of physical or mental examinations and of scientific tests or experiments made in

14   connection with this case, which are in the possession or control of defendant, which she intends to

15   introduce as evidence-in-chief at the trial, or which were prepared by a witness whom defendant intends

16   to call as a witness.  Because the United States will comply with defendant's request for delivery of

17   reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of

18   the Federal Rules of Criminal Procedure.  The United States also requests that the Court make such

19   order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the

20   discovery to which it is entitled.

21   **B.    RULE 26.2**

22       Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements

23   of all witnesses, except a statement made by Defendant.  This rule thus provides for the reciprocal

24   production of Jencks statements.

25       The time frame established by the rule requires the statement to be provided after the witness

26   has testified.  To expedite trial proceedings, the United States hereby requests that Defendant be ordered

27   to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the

28

08CR1727-BTM

1    Court.  Such an order should include any form in which these statements are memorialized, including

2    but not limited to, tape recordings, handwritten or typed notes and/or reports

3

4                                                    **V**

5                                          **CONCLUSION**

6           For the above stated  reasons, the Government requests that the defendant's motions be denied

7    where indicated and the Government's motion for reciprocal discovery be granted.

8           DATED: July 13, 2008

9                                                      Respectfully submitted,

10                                                     KAREN P. HEWITT
                                                       United States Attorney

11

12                                                     s/John R. Kraemer

13                                                     JOHN R. KRAEMER
                                                       Assistant U.S. Attorney

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>                                  )<br>            Plaintiff,          )<br>                                  )<br>      v.                          )<br>                                  )<br> YOMAYRA PATRICIA PENUELAS(1),  )<br>                                  )<br>            Defendant.         )<br> _____) | Case No. 08CR1727-BTM<br><br><br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

       I, JOHN R. KRAEMER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

       I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to defendant's pre-trial motions together with the Government's request for reciprocal discovery by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

       Leila W. Morgan
       225 Broadway, Suite 900
       San Diego, CA 92101-5008
       Email: Leila_Morgan@fd.org

       I declare under penalty of perjury that the foregoing is true and correct.

       Executed on July 13, 2008.

                                          s/John R. Kraemer
                                          JOHN R. KRAEMER

08CR1727-BTM

# Exhibit A



```
 1                    UNITED STATES DISTRICT COURT

 2                   SOUTHERN DISTRICT OF CALIFORNIA

 3

 4
```

```
 5
     IN RE:   THE IMPANELMENT              )
 6                                         )
     OF GRAND JURY PANELS 07-1 AND         )
 7                                         )
     07-2                                  )
 8                                         )
                                           )
 9   _____)

10

11             BEFORE THE HONORABLE LARRY ALAN BURNS

12                   UNITED STATES DISTRICT JUDGE

13

14           REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

15                   WEDNESDAY, JANUARY 11, 2007

16

17

18

19

20

21
     COURT REPORTER:                EVA OEMICK
22                                  OFFICIAL COURT REPORTER
                                    UNITED STATES COURTHOUSE
23                                  940 FRONT STREET, STE. 2190
                                    SAN DIEGO, CA 92101
24                                  TEL: (619) 615-3103

25
```

PDF created with pdfFactory trial version www.pdffactory.com

2

1    SAN DIEGO, CALIFORNIA-WEDNESDAY, JANUARY 11, 2007-9:30 A.M.

2         THE COURT:  LADIES AND GENTLEMEN, YOU HAVE BEEN

3    SELECTED TO SIT ON THE GRAND JURY.  IF YOU'LL STAND AND RAISE

4    YOUR RIGHT HAND, PLEASE.

5    Case 3:07-mr-01519-WQH  Document 26-3  Filed 06/18/2007    Page 3 of 33 MR. HAMRICK:  WOULD ALL OF YOU RAISE YOUR RIGHT HAND

6    SWEAR OR AFFIRM THAT YOU SHALL DILIGENTLY INQUIRE INTO AND

7    MAKE TRUE PRESENTMENT OR INDICTMENT OF ALL MATTERS AND THINGS

8    AS SHALL BE GIVEN TO YOU IN CHARGE OR OTHERWISE COME TO YOUR

9    KNOWLEDGE TOUCHING YOUR GRAND JURY SERVICE; TO KEEP SECRET THE

10   COUNSEL OF THE UNITED STATES, YOUR FELLOWS AND YOURSELVES; NOT

11   TO PRESENT OR INDICT ANY PERSON THROUGH HATRED, MALICE OR ILL

12   WILL; NOR LEAVE ANY PERSON UNREPRESENTED OR UNINDICTED THROUGH

13   FEAR, FAVOR, OR AFFECTION, NOR FOR ANY REWARD, OR HOPE OR

14   PROMISE THEREOF; BUT IN ALL YOUR PRESENTMENTS AND INDICTMENTS

15   TO PRESENT THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE

16   TRUTH, TO THE BEST OF YOUR SKILL AND UNDERSTANDING?

17        IF SO, ANSWER, "I DO."

18        (ALL GRAND JURORS ANSWER AFFIRMATIVELY)

19        THE COURT:  ALL JURORS HAVE TAKEN THE OATH AND

20   ANSWERED AFFIRMATIVELY.

21        IF YOU'LL HAVE A SEAT.  WE ARE NEARLY COMPLETED WITH

22   THIS PROCESS.

23        I AM OBLIGATED BY THE CONVENTION OF THE COURT AND

24   THE LAW OF THE UNITED STATES TO GIVE YOU A FURTHER CHARGE

25   REGARDING YOUR RESPONSIBILITY AS GRAND JURORS.  THIS WILL

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

3

1    APPLY NOT ONLY TO THOSE WHO HAVE BEEN SWORN, BUT THE REST OF

2    YOU WHOSE NAMES HAVE NOT YET BEEN CALLED, YOU ARE GOING TO BE

3    PUT IN RESERVE FOR US.

4            AND IF DISABILITIES OCCUR -- I DON'T MEAN IN A

5    PHYSICAL SENSE -- BUT I MOVE -- IF CIRCUMSTANCES DICTATE THAT

6    SOME OF THE FOLKS THAT HAVE BEEN SWORN IN TODAY ARE RELIEVED,

7    YOU WILL BE CALLED AS REPLACEMENT GRAND JURORS.  SO THESE

8    INSTRUCTIONS APPLY TO ALL WHO ARE ASSEMBLED HERE TODAY.

9            NOW THAT YOU HAVE BEEN IMPANELED AND SWORN AS A

10    GRAND JURY, IT'S THE COURT'S RESPONSIBILITY TO INSTRUCT YOU ON

11    THE LAW WHICH GOVERNS YOUR ACTIONS AND YOUR DELIBERATIONS AS

12    GRAND JURORS.

13            THE FRAMERS OF OUR FEDERAL CONSTITUTION DETERMINED

14    AND DEEMED THE GRAND JURY SO IMPORTANT TO THE ADMINISTRATION

15    OF JUSTICE THAT THEY INCLUDED A PROVISION FOR THE GRAND JURY

16    IN OUR BILL OF RIGHTS.

17            AS I SAID BEFORE, THE 5TH AMENDMENT TO THE UNITED

18    STATES CONSTITUTION PROVIDES, IN PART, THAT NO PERSON SHALL BE

19    HELD TO ANSWER FOR A CAPITAL OR OTHERWISE INFAMOUS CRIME

20    WITHOUT ACTION BY THE GRAND JURY.

21            WHAT THAT MEANS IN A VERY REAL SENSE IS YOU'RE THE

22    BUFFER BETWEEN THE GOVERNMENT'S POWER TO CHARGE SOMEONE WITH A

23    CRIME AND THAT CASE GOING FORWARD OR NOT GOING FORWARD.

24            THE FUNCTION OF THE GRAND JURY, IN FEDERAL COURT AT

25    LEAST, IS TO DETERMINE PROBABLE CAUSE.  THAT'S THE SIMPLE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

4

1    FORMULATION THAT I MENTIONED TO A NUMBER OF YOU DURING THE

2    JURY SELECTION PROCESS.  PROBABLE CAUSE IS JUST AN ANALYSIS OF

3    WHETHER A CRIME WAS COMMITTED AND THERE'S A REASONABLE BASIS

4    TO BELIEVE THAT AND WHETHER A CERTAIN PERSON IS ASSOCIATED

5    WITH THE Case 3:07-cr-01319-WQH   Document 26-3   Filed 06/18/2007    Page 5 of 33 TO

6    COMMIT IT.

7              IF THE ANSWER IS YES, THEN AS GRAND JURORS YOUR

8    FUNCTION IS TO FIND THAT THE PROBABLE CAUSE IS THERE, THAT THE

9    CASE HAS BEEN SUBSTANTIATED, AND IT SHOULD MOVE FORWARD.  IF

10   CONSCIENTIOUSLY, AFTER LISTENING TO THE EVIDENCE, YOU SAY "NO,

11   I CAN'T FORM A REASONABLE BELIEF EITHER THAT A CRIME WAS

12   COMMITTED OR THAT THIS PERSON HAS ANYTHING TO DO WITH IT, THEN

13   YOUR OBLIGATION, OF COURSE, WOULD BE TO DECLINE TO INDICT, TO

14   TURN THE CASE AWAY AND NOT HAVE IT GO FORWARD.

15             A GRAND JURY CONSISTS OF 23 MEMBERS OF THE COMMUNITY

16   DRAWN AT RANDOM.  I'VE USED THE TERM "INFAMOUS CRIME."  AN

17   INFAMOUS CRIME, UNDER OUR LAW, REFERS TO A SERIOUS CRIME WHICH

18   CAN BE PUNISHED BY IMPRISONMENT BY MORE THAN ONE YEAR.  THE

19   PROSECUTORS WILL PRESENT FELONY CASES TO THE GRAND JURY.

20   MISDEMEANORS, UNDER FEDERAL LAW, THEY HAVE DISCRETION TO

21   CHARGE ON THEIR OWN.  AND THEY'RE NOT -- THOSE CHARGES --

22   MISDEMEANORS AREN'T ENTITLED TO PRESENTMENT BEFORE A GRAND

23   JURY.

24             BUT ANY CASE THAT CARRIES A PENALTY OF A YEAR OR

25   MORE MUST BE PRESENTED TO -- ACTUALLY, MORE THAN A YEAR.  A

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

5

1    YEAR AND A DAY OR LONGER MUST BE PRESENTED TO A GRAND JURY.

2              THE PURPOSE OF THE GRAND JURY, AS I MENTIONED, IS TO

3    DETERMINE WHETHER THERE'S SUFFICIENT EVIDENCE TO JUSTIFY A

4    FORMAL ACCUSATION AGAINST A PERSON.

5    Case 3:07-cr-03018-WQH   Document 26-3   Filed 06/18/2007   Page 6 of 33

6    THIS IN A DISPARAGING WAY.  BUT IF LAW ENFORCEMENT OFFICIALS,

7    INCLUDING AGENTS AS WELL AS THE FOLKS THAT STAFF THE U.S.

8    ATTORNEY'S OFFICE, WERE NOT REQUIRED TO SUBMIT CHARGES TO AN

9    IMPARTIAL GRAND JURY TO DETERMINE WHETHER THE EVIDENCE WAS

10   SUFFICIENT, THEN OFFICIALS IN OUR COUNTRY WOULD BE FREE TO

11   ARREST AND BRING ANYONE TO TRIAL NO MATTER HOW LITTLE EVIDENCE

12   EXISTED TO SUPPORT THE CHARGE.  WE DON'T WANT THAT.  WE DON'T

13   WANT THAT.

14             WE WANT THE BURDEN OF THE TRIAL TO BE JUSTIFIED BY

15   SUBSTANTIAL EVIDENCE, EVIDENCE THAT CONVINCES YOU OF PROBABLE

16   CAUSE TO BELIEVE THAT A CRIME PROBABLY OCCURRED AND THE PERSON

17   IS PROBABLY RESPONSIBLE.

18             NOW, AGAIN, I MAKE THE DISTINCTION YOU DON'T HAVE TO

19   VOTE ON ULTIMATE OUTCOMES.  THAT'S NOT UP TO YOU.  YOU CAN BE

20   ASSURED THAT IN EACH CASE, YOU INDICT THE PERSON WHO WILL BE

21   ENTITLED TO A FULL SET OF RIGHTS AND THAT THERE WILL BE A JURY

22   TRIAL IF THE PERSON ELECTS ONE.  THE JURY WILL HAVE TO PASS ON

23   THE ACCUSATION ONCE AGAIN USING A MUCH HIGHER STANDARD OF

24   PROOF, PROOF BEYOND A REASONABLE DOUBT.

25             AS MEMBERS OF THE GRAND JURY, YOU, IN A VERY REAL

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

6

1    SENSE, STAND BETWEEN THE GOVERNMENT AND THE ACCUSED.  IT'S

2    YOUR DUTY TO SEE THAT INDICTMENTS ARE RETURNED ONLY AGAINST

3    THOSE WHOM YOU FIND PROBABLE CAUSE TO BELIEVE ARE GUILTY AND

4    TO SEE TO IT THAT THE INNOCENT ARE NOT COMPELLED TO GO TO

5    TRIAL OR SERVE ANY TIME IN FACE OF AN ACCUSATION.

Case 3:07-cr-01319-WQH  Document 20-3    Filed 06/18/2007    Page 7 of 33

6         IF A MEMBER OF THE GRAND JURY IS RELATED BY BLOOD OR

7    MARRIAGE OR KNOWS OR SOCIALIZES TO SUCH AN EXTENT AS TO FIND

8    HIMSELF OR HERSELF IN A BIASED STATE OF MIND AS TO THE PERSON

9    UNDER INVESTIGATION OR ALTERNATIVELY YOU SHOULD FIND YOURSELF

10   BIASED FOR ANY REASON, THEN THAT PERSON SHOULD NOT PARTICIPATE

11   IN THE INVESTIGATION UNDER QUESTION OR RETURN THE

12   INDICTMENT.

13        ONE OF OUR GRAND JURORS, MS. GARFIELD, HAS RELATIVES

14   THAT -- OBVIOUSLY, MS. GARFIELD, IF YOUR SON OR YOUR HUSBAND

15   WAS EVER CALLED IN FRONT OF THE GRAND JURY, THAT WOULD BE A

16   CASE WHERE YOU WOULD SAY, "THIS IS JUST TOO CLOSE.  I'M GOING

17   TO RECUSE MYSELF FROM THIS PARTICULAR CASE.  NO ONE WOULD

18   IMAGINE THAT I COULD BE ABSOLUTELY IMPARTIAL WHEN IT COMES TO

19   MY OWN BLOOD RELATIVES."

20        SO THOSE ARE THE KINDS OF SITUATIONS THAT I REFER TO

21   WHEN I TALK ABOUT EXCUSING YOURSELF FROM A PARTICULAR GRAND

22   JURY DELIBERATION.  IF THAT HAPPENS, YOU SHOULD INDICATE TO

23   THE FOREPERSON OF THE GRAND JURY, WITHOUT GOING INTO DETAIL,

24   FOR WHATEVER REASON, THAT YOU WANT TO BE EXCUSED FROM GRAND

25   JURY DELIBERATIONS ON A PARTICULAR CASE OR CONSIDERATION OF A

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

Case 3:07-cr-01319-WQH    Document 263    Filed 06/18/2007    Page 8 of 33

7

1    PARTICULAR MATTER IN WHICH YOU FEEL YOU'RE BIASED OR YOU MAY

2    HAVE A CONFLICT.

3           THIS DOES NOT MEAN THAT IF YOU HAVE AN OPPORTUNITY,

4    YOU SHOULD NOT PARTICIPATE IN AN INVESTIGATION.  HOWEVER, IT

5    DOES MEAN THAT IF YOU HAVE A FIXED STATE OF MIND BEFORE YOU

6    HEAR EVIDENCE EITHER ON THE BASIS OF FRIENDSHIP OR BECAUSE YOU

7    HATE SOMEBODY OR HAVE SIMILAR MOTIVATION, THEN YOU SHOULD STEP

8    ASIDE AND NOT PARTICIPATE IN THAT PARTICULAR GRAND JURY

9    INVESTIGATION AND IN VOTING ON THE PROPOSED INDICTMENT.  THIS

10   IS WHAT I MEANT WHEN I TALKED TO YOU ABOUT BEING FAIR-MINDED.

11          ALTHOUGH THE GRAND JURY HAS EXTENSIVE POWERS,

12   THEY'RE LIMITED IN SOME IMPORTANT RESPECTS.

13          FIRST, THESE ARE THE LIMITATIONS ON YOUR SERVICE:

14   YOU CAN ONLY INVESTIGATE CONDUCT THAT VIOLATES THE FEDERAL

15   CRIMINAL LAWS.  THAT'S YOUR CHARGE AS FEDERAL GRAND JURORS, TO

16   LOOK AT VIOLATIONS OR SUSPECTED VIOLATIONS OF FEDERAL CRIMINAL

17   LAW.

18          YOU ARE A FEDERAL GRAND JURY, AND CRIMINAL ACTIVITY

19   WHICH VIOLATES STATE LAW, THE LAWS OF THE STATE OF CALIFORNIA,

20   IS OUTSIDE OF YOUR INQUIRY.  IT MAY HAPPEN AND FREQUENTLY DOES

21   HAPPEN THAT SOME OF THE CONDUCT THAT'S UNDER INVESTIGATION BY

22   THE FEDERAL GRAND JURY ALSO VIOLATES STATE LAW.  AND THIS IS

23   FINE.  THAT'S PROPER.  BUT THERE ALWAYS HAS TO BE SOME FEDERAL

24   CONNECTION TO WHAT IS UNDER INVESTIGATION OR YOU HAVE NO

25   JURISDICTION.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

8

1          THERE'S ALSO A GEOGRAPHIC LIMITATION ON THE SCOPE OF

2     YOUR INQUIRIES AND THE EXERCISE OF YOUR POWERS.  YOU MAY

3     INQUIRE ONLY INTO FEDERAL OFFENSES COMMITTED IN OUR FEDERAL

4     DISTRICT, WHICH INCLUDES SAN DIEGO AND IMPERIAL COUNTIES; THAT

5     IS, THE SOUTHERN DISTRICT OF CALIFORNIA.

6          YOU MAY HAVE CASES THAT IMPLICATE ACTIVITIES IN

7     OTHER AREAS, OTHER DISTRICTS, AND THERE MAY BE SOME EVIDENCE

8     OF CRIMINAL ACTIVITY IN CONJUNCTION WITH WHAT GOES ON HERE

9     THAT'S ALSO HAPPENING ELSEWHERE.  THERE ALWAYS HAS TO BE A

10    CONNECTION TO OUR DISTRICT.

11         THROUGHOUT THE UNITED STATES, WE HAVE 93 DISTRICTS

12    NOW.  THE STATES ARE CUT UP LIKE PIECES OF PIE, AND EACH

13    DISTRICT IS SEPARATELY DENOMINATED, AND EACH DISTRICT HAS

14    RESPONSIBILITY FOR THEIR OWN COUNTIES AND GEOGRAPHY.  AND YOU,

15    TOO, ARE BOUND BY THAT LIMITATION.

16         I'VE GONE OVER THIS WITH A COUPLE OF PEOPLE.  YOU

17    UNDERSTOOD FROM THE QUESTIONS AND ANSWERS THAT A COUPLE OF

18    PEOPLE WERE EXCUSED, I THINK THREE IN THIS CASE, BECAUSE THEY

19    COULD NOT ADHERE TO THE PRINCIPLE THAT I'M ABOUT TO TELL YOU.

20         BUT IT'S NOT FOR YOU TO JUDGE THE WISDOM OF THE

21    CRIMINAL LAWS ENACTED BY CONGRESS; THAT IS, WHETHER OR NOT

22    THERE SHOULD BE A FEDERAL LAW OR SHOULD NOT BE A FEDERAL LAW

23    DESIGNATING CERTAIN ACTIVITY IS CRIMINAL IS NOT UP TO YOU.

24    THAT'S A JUDGMENT THAT CONGRESS MAKES.

25         AND IF YOU DISAGREE WITH THAT JUDGMENT MADE BY

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

9

1    CONGRESS, THEN YOUR OPTION IS NOT TO SAY "WELL, I'M GOING TO

2    VOTE AGAINST INDICTING EVEN THOUGH I THINK THAT THE EVIDENCE

3    IS SUFFICIENT" OR "I'M GOING TO VOTE IN FAVOR OF EVEN THOUGH

4    THE EVIDENCE MAY BE INSUFFICIENT."  INSTEAD, YOUR OBLIGATION

5    IS TO VOTE YOUR CONSCIENCE AS FAR AS CHANGES IN THE

6    LAWS, BUT NOT TO BRING YOUR PERSONAL DEFINITION OF WHAT THE

7    LAW OUGHT TO BE AND TRY TO IMPOSE THAT THROUGH APPLYING IT IN

8    A GRAND JURY SETTING.

9            FURTHERMORE, WHEN YOU'RE DECIDING WHETHER TO INDICT

10   OR NOT TO INDICT, YOU SHOULDN'T BE CONCERNED WITH PUNISHMENT

11   THAT ATTACHES TO THE CHARGE.  I THINK I ALSO ALLUDED TO THIS

12   IN THE CONVERSATION WITH ONE GENTLEMAN.  JUDGES ALONE

13   DETERMINE PUNISHMENT.  WE TELL TRIAL JURIES IN CRIMINAL CASES

14   THAT THEY'RE NOT TO BE CONCERNED WITH THE MATTER OF PUNISHMENT

15   EITHER.  YOUR OBLIGATION AT THE END OF THE DAY IS TO MAKE A

16   BUSINESS-LIKE DECISION ON FACTS AND APPLY THOSE FACTS TO THE

17   LAW AS IT'S EXPLAINED AND READ TO YOU.

18           THE CASES WHICH YOU'LL APPEAR WILL COME BEFORE YOU

19   IN VARIOUS WAYS.  FREQUENTLY, PEOPLE ARE ARRESTED DURING OR

20   SHORTLY AFTER THE COMMISSION OF AN ALLEGED CRIME.  AND THEN

21   THEY'RE TAKEN BEFORE A MAGISTRATE JUDGE, WHO HOLDS A

22   PRELIMINARY HEARING TO DETERMINE WHETHER INITIALLY THERE'S

23   PROBABLE CAUSE TO BELIEVE A PERSON'S COMMITTED A CRIME.

24           ONCE THE MAGISTRATE JUDGE FINDS PROBABLE CAUSE, HE

25   OR SHE WILL DIRECT THAT THE ACCUSED PERSON BE HELD FOR ACTION

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

10

1   BY THE GRAND JURY.  REMEMBER, UNDER OUR SYSTEM AND THE 5TH

2   AMENDMENT, TRIALS OF SERIOUS AND INFAMOUS CRIMES CAN ONLY

3   PROCEED WITH GRAND JURY ACTION.  SO THE DETERMINATION OF THE

4   MAGISTRATE JUDGE IS JUST TO HOLD THE PERSON UNTIL THE GRAND

5   JURY CAN DO ITS WORK AND A GRAND JURY CAN DECIDE THE

6   CASE CAN FORMALLY GO FORWARD.  IT'S AT THAT POINT THAT YOU'LL

7   BE CALLED UPON TO CONSIDER WHETHER AN INDICTMENT SHOULD BE

8   RETURNED IN A GIVEN CASE.

9            OTHER CASES MAY BE BROUGHT TO YOU BY THE UNITED

10  STATES ATTORNEY OR AN ASSISTANT UNITED STATES ATTORNEY BEFORE

11  AN ARREST IS MADE.  BUT DURING THE COURSE OF AN INVESTIGATION

12  OR AFTER AN INVESTIGATION HAS BEEN CONDUCTED, THERE'S TWO WAYS

13  THAT CASES GENERALLY ENTER THE CRIMINAL JUSTICE PROCESS:  THE

14  REACTIVE OFFENSES WHERE, AS THE NAME IMPLIES, THE POLICE REACT

15  TO A CRIME AND ARREST SOMEBODY.  AND THOSE CASES WILL THEN BE

16  SUBMITTED TO YOU AFTER MUCH OF THE FACTS ARE KNOWN.  AND THEN

17  THERE'S PROACTIVE CASES, CASES WHERE MAYBE THERE'S A SUSPICION

18  OR A HUNCH OF WRONGDOING.  THE FBI MAY BE CALLED UPON TO

19  INVESTIGATE OR SOME OTHER FEDERAL AGENCY, AND THEY MAY NEED

20  THE ASSISTANCE OF THE GRAND JURY IN FACILITATING THAT

21  INVESTIGATION.

22            THE GRAND JURY HAS BROAD INVESTIGATORY POWERS.  YOU

23  HAVE THE POWER TO ISSUE SUBPOENAS, FOR EXAMPLE, FOR RECORDS OR

24  FOR PEOPLE TO APPEAR.  SOMETIMES IT HAPPENS THAT PEOPLE SAY "I

25  DON'T HAVE TO TALK TO YOU" TO THE FBI, AND THEY REFUSE TO TALK

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

11

1   TO THE AUTHORITIES.  UNDER THOSE CIRCUMSTANCES, ON OCCASION,

2   THE FBI MAY GO TO THE U.S. ATTORNEY AND SAY, "LOOK, YOU NEED

3   TO FIND OUT WHAT HAPPENED HERE.  SUMMON THIS PERSON IN FRONT

4   OF THE GRAND JURY."  SO IT MAY BE THAT YOU'RE CALLED UPON TO

5   EVALUATE WHETHER A CRIME OCCURRED AND WHETHER THERE SHOULD

6   BE AN INDICTMENT.  YOU, IN A VERY REAL SENSE, ARE PART OF THE

7   INVESTIGATION.

8           IT MAY HAPPEN THAT DURING THE COURSE OF AN

9   INVESTIGATION INTO ONE CRIME, IT TURNS OUT THAT THERE IS

10  EVIDENCE OF A DIFFERENT CRIME THAT SURFACES.  YOU, AS GRAND

11  JURORS, HAVE A RIGHT TO PURSUE THE NEW CRIME THAT YOU

12  INVESTIGATE, EVEN CALLING NEW WITNESSES AND SEEKING OTHER

13  DOCUMENTS OR PAPERS OR EVIDENCE BE SUBPOENAED.

14          NOW, IN THAT REGARD, THERE'S A CLOSE ASSOCIATION

15  BETWEEN THE GRAND JURY AND THE U.S. ATTORNEY'S OFFICE AND THE

16  INVESTIGATIVE AGENCIES OF THE FEDERAL GOVERNMENT.  UNLIKE THE

17  U.S. ATTORNEY'S OFFICE OR THOSE INVESTIGATIVE AGENCIES, THE

18  GRAND JURY DOESN'T HAVE ANY POWER TO EMPLOY INVESTIGATORS OR

19  TO EXPEND FEDERAL FUNDS FOR INVESTIGATIVE PURPOSES.

20          INSTEAD, YOU MUST GO BACK TO THE U.S. ATTORNEY AND

21  ASK THAT THOSE THINGS BE DONE.  YOU'LL WORK CLOSELY WITH THE

22  U.S. ATTORNEY'S OFFICE IN YOUR INVESTIGATION OF CASES.  IF ONE

23  OR MORE GRAND JURORS WANT TO HEAR ADDITIONAL EVIDENCE ON A

24  CASE OR THINK THAT SOME ASPECT OF THE CASE OUGHT TO BE

25  PURSUED, YOU MAY MAKE THAT REQUEST TO THE U.S. ATTORNEY.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

12

1          IF THE U.S. ATTORNEY REFUSES TO ASSIST YOU OR IF YOU

2     BELIEVE THAT THE U.S. ATTORNEY IS NOT ACTING IMPARTIALLY, THEN

3     YOU CAN TAKE THE MATTER UP WITH ME.  I'M THE ASSIGNED JURY

4     JUDGE, AND I WILL BE THE LIAISON WITH THE GRAND JURIES.

5          YOU CAN USE YOUR POWER TO INVESTIGATE EVEN OVER THE

6     ACTIVE OPPOSITION OF THE UNITED STATES ATTORNEY.  IF THE

7     MAJORITY OF YOU ON THE GRAND JURY THINK THAT A SUBJECT OUGHT

8     TO BE PURSUED AND THE U.S. ATTORNEY THINKS NOT, THEN YOUR

9     DECISION TRUMPS, AND YOU HAVE THE RIGHT TO HAVE THAT

10    INVESTIGATION PURSUED IF YOU BELIEVE IT'S NECESSARY TO DO SO

11    IN THE INTEREST OF JUSTICE.

12          I MENTION THESE THINGS TO YOU AS A THEORETICAL

13    POSSIBILITY.  THE TRUTH OF THE MATTER IS IN MY EXPERIENCE HERE

14    IN THE OVER 20 YEARS IN THIS COURT, THAT KIND OF TENSION DOES

15    NOT EXIST ON A REGULAR BASIS, THAT I CAN RECALL, BETWEEN THE

16    U.S. ATTORNEY AND GRAND JURIES.  THEY GENERALLY WORK TOGETHER.

17    THE U.S. ATTORNEY IS GENERALLY DEFERENTIAL TO THE GRAND JURY

18    AND WHAT THE GRAND JURY WANTS.

19          IT'S IMPORTANT TO KEEP IN MIND THAT YOU WILL AND DO

20    HAVE AN INVESTIGATORY FUNCTION AND THAT THAT FUNCTION IS

21    PARAMOUNT TO EVEN WHAT THE U.S. ATTORNEY MAY WANT YOU TO DO.

22          IF YOU, AS I SAID, BELIEVE THAT AN INVESTIGATION

23    OUGHT TO GO INTO OTHER AREAS BOTH IN TERMS OF SUBJECT MATTER,

24    BEING A FEDERAL CRIME, AND GEOGRAPHICALLY, THEN YOU AS A GROUP

25    CAN MAKE THAT DETERMINATION AND DIRECT THE INVESTIGATION THAT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

13

1    WAY.

2           SINCE THE UNITED STATES ATTORNEY HAS THE DUTY OF

3    PROSECUTING PERSONS CHARGED WITH THE COMMISSION OF FEDERAL

4    CRIMES, SHE OR ONE OF HER ASSISTANTS -- BY THE WAY, THE U.S.

5    Case 3:07-cr-03319-WQH  Document 26-3 -- Filed 06/18/2007  Page 14 of 33

6    ASSISTANTS WILL PRESENT THE MATTERS WHICH THE GOVERNMENT HAS

7    DESIRES TO HAVE YOU CONSIDER.  THE ATTORNEY WILL EDUCATE YOU

8    ON THE LAW THAT APPLIES BY READING THE LAW TO YOU OR POINTING

9    IT OUT, THE LAW THAT THE GOVERNMENT BELIEVES WAS VIOLATED.

10   THE ATTORNEY WILL SUBPOENA FOR TESTIMONY BEFORE YOU SUCH

11   WITNESSES AS THE LAWYER THINKS ARE IMPORTANT AND NECESSARY TO

12   ESTABLISH PROBABLE CAUSE AND ALLOW YOU TO DO YOUR FUNCTION,

13   AND ALSO ANY OTHER WITNESSES THAT YOU MAY REQUEST THE ATTORNEY

14   TO CALL IN RELATION TO THE SUBJECT MATTER UNDER INVESTIGATION.

15          REMEMBER THAT THE DIFFERENCE BETWEEN THE GRAND JURY

16   FUNCTION AND THAT OF THE TRIAL JURY IS THAT YOU ARE NOT

17   PRESIDING IN A FULL-BLOWN TRIAL.  IN MOST OF THE CASES THAT

18   YOU APPEAR, THE LAWYER FOR THE GOVERNMENT IS NOT GOING TO

19   BRING IN EVERYBODY THAT MIGHT BE BROUGHT IN AT THE TIME OF

20   TRIAL; THAT IS, EVERYBODY THAT HAS SOME RELEVANT EVIDENCE TO

21   OFFER.  THEY'RE NOT GOING TO BRING IN EVERYONE WHO CONCEIVABLY

22   COULD SAY SOMETHING THAT MIGHT BEAR ON THE OUTCOME.  THEY'RE

23   PROBABLY GOING TO BRING IN A LIMITED NUMBER OF WITNESSES JUST

24   TO ESTABLISH PROBABLE CAUSE.  OFTENTIMES, THEY PRESENT A

25   SKELETON CASE.  IT'S EFFICIENT.  IT'S ALL THAT'S NECESSARY.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

14

1    IT SAVES TIME AND RESOURCES.

2            WHEN YOU ARE PRESENTED WITH A CASE, IT WILL TAKE 16

3    OF YOUR NUMBER OUT OF THE 23, 16 MEMBERS OF THE GRAND JURY OUT

4    OF THE 23, TO CONSTITUTE A QUORUM.  YOU CAN'T DO BUSINESS

5    UNLESS THERE'S AT LEAST 16 MEMBERS OF THE GRAND JURY PRESENT

6    FOR THE TRANSACTION OF ANY BUSINESS.  IF FEWER THAN 16 GRAND

7    JURORS ARE PRESENT EVEN FOR A MOMENT, THEN THE PROCEEDINGS OF

8    THE GRAND JURY MUST STOP.  YOU CAN NEVER OPERATE WITHOUT A

9    QUORUM OF AT LEAST 16 MEMBERS PRESENT.

10            NOW, THE EVIDENCE THAT YOU WILL HEAR NORMALLY WILL

11    CONSIST OF TESTIMONY OF WITNESSES AND WRITTEN DOCUMENTS.  YOU

12    MAY GET PHOTOGRAPHS.  THE WITNESSES WILL APPEAR IN FRONT OF

13    YOU SEPARATELY.  WHEN A WITNESS FIRST APPEARS BEFORE YOU, THE

14    GRAND JURY FOREPERSON WILL ADMINISTER AN OATH.  THE PERSON

15    MUST SWEAR OR AFFIRM TO TELL THE TRUTH.  AND AFTER THAT'S BEEN

16    ACCOMPLISHED, THE WITNESS WILL BE QUESTIONED.

17            ORDINARILY, THE U.S. ATTORNEY PRESIDING AT THE --

18    REPRESENTING THE U.S. GOVERNMENT AT THE GRAND JURY SESSION

19    WILL ASK THE QUESTIONS FIRST.  THEN THE FOREPERSON OF THE

20    GRAND JURY MAY ASK QUESTIONS, AND OTHER MEMBERS OF THE GRAND

21    JURY MAY ASK QUESTIONS, ALSO.

22            I USED TO APPEAR IN FRONT OF THE GRAND JURY.  I'LL

23    TELL YOU WHAT I WOULD DO IS FREQUENTLY I'D ASK THE QUESTIONS,

24    AND THEN I'D SEND THE WITNESS OUT AND ASK THE GRAND JURORS IF

25    THERE WERE ANY QUESTIONS THEY WANTED ME TO ASK.  AND THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

15

1    REASON I DID THAT IS THAT I HAD THE LEGAL TRAINING TO KNOW

2    WHAT WAS RELEVANT AND WHAT MIGHT BE PREJUDICIAL TO THE

3    DETERMINATION OF WHETHER THERE WAS PROBABLE CAUSE.

4         A LOT OF TIMES PEOPLE WILL SAY, "WELL, HAS THIS

5    PERSON DONE OTHER THINGS?"  BECAUSE THAT RELEVANT

6    QUESTION, ON THE ISSUE OF PROBABLE CAUSE, IT HAS TO BE

7    ASSESSED ON A CASE-BY-CASE BASIS.  IN OTHER WORDS, THE

8    EVIDENCE OF THIS OCCASION OF CRIME THAT'S ALLEGED MUST BE

9    ADEQUATE WITHOUT REGARD TO WHAT THE PERSON HAS DONE IN THE

10   PAST.  I WOULDN'T WANT THAT QUESTION ANSWERED UNTIL AFTER THE

11   GRAND JURY HAD MADE A DETERMINATION OF WHETHER THERE WAS

12   ENOUGH EVIDENCE.

13        SO WHEN I APPEARED IN FRONT OF THE GRAND JURY, I'D

14   TELL THEM "YOU'LL GET YOUR QUESTION ANSWERED, BUT I'D LIKE YOU

15   TO VOTE ON THE INDICTMENT FIRST.  I'D LIKE YOU TO DETERMINE

16   WHETHER THERE'S ENOUGH EVIDENCE BASED ON WHAT'S BEEN

17   PRESENTED, AND THEN WE'LL ANSWER IT."  I DIDN'T WANT TO

18   PREJUDICE THE GRAND JURY.  THERE MAY BE SIMILAR CONCERNS THAT

19   COME UP.  NOW, THE PRACTICES VARY AMONG THE ASSISTANT U.S.

20   ATTORNEYS THAT WILL APPEAR IN FRONT OF YOU.

21        ON OTHER OCCASIONS WHEN I DIDN'T THINK THERE WAS ANY

22   RISK THAT MIGHT PREJUDICE THE PROCESS, I WOULD ALLOW THE GRAND

23   JURY TO FOLLOW UP THEMSELVES AND ASK QUESTIONS.  A LOT OF

24   TIMES, THE FOLLOW-UPS ARE FACTUAL ON DETAILED MATTERS.  THAT

25   PRACTICE WILL VARY DEPENDING ON WHO IS REPRESENTING THE UNITED

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

16

1  STATES AND PRESENTING THE CASE TO YOU.  THE POINT IS YOU HAVE

2  THE RIGHT TO ASK ADDITIONAL QUESTIONS OR TO ASK THAT THOSE

3  QUESTIONS BE PUT TO THE WITNESS.

4          IN THE EVENT A WITNESS DOESN'T SPEAK OR UNDERSTAND

5  ENGLISH, THEN ANOTHER PERSON WILL BE BROUGHT INTO THE ROOM.

6  OBVIOUSLY, THAT WOULD BE AN INTERPRETER TO ALLOW YOU TO

7  UNDERSTAND THE ANSWERS.  WHEN WITNESSES DO APPEAR IN FRONT OF

8  THE GRAND JURY, THEY SHOULD BE TREATED COURTEOUSLY.  QUESTIONS

9  SHOULD BE PUT TO THEM IN AN ORDERLY FASHION.  THE QUESTIONS

10 SHOULD NOT BE HOSTILE.

11         IF YOU HAVE ANY DOUBT WHETHER IT'S PROPER TO ASK A

12 PARTICULAR QUESTION, THEN YOU CAN ASK THE U.S. ATTORNEY WHO'S

13 ASSISTING IN THE INVESTIGATION FOR ADVICE ON THE MATTER.  YOU

14 ALONE AS GRAND JURORS DECIDE HOW MANY WITNESSES YOU WANT TO

15 HEAR.  WITNESSES CAN BE SUBPOENAED FROM ANYWHERE IN THE

16 COUNTRY.  YOU HAVE NATIONAL JURISDICTION.

17         HOWEVER, PERSONS SHOULD NOT ORDINARILY BE SUBJECTED

18 TO DISRUPTION OF THEIR DAILY LIVES UNLESS THERE'S GOOD REASON.

19 THEY SHOULDN'T BE HARASSED OR ANNOYED OR INCONVENIENCED.

20 THAT'S NOT THE PURPOSE OF THE GRAND JURY HEARING, NOR SHOULD

21 PUBLIC FUNDS BE EXPENDED TO BRING WITNESSES UNLESS YOU BELIEVE

22 THAT THE WITNESSES CAN PROVIDE MEANINGFUL, RELEVANT EVIDENCE

23 WHICH WILL ASSIST IN YOUR DETERMINATIONS AND YOUR

24 INVESTIGATION.

25         ALL WITNESSES WHO ARE CALLED IN FRONT OF THE GRAND

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

17

1    JURY HAVE CERTAIN RIGHTS.  THESE INCLUDE, AMONG OTHERS, THE

2    RIGHT TO REFUSE TO ANSWER QUESTIONS ON THE GROUNDS THAT THE

3    ANSWER TO A QUESTION MIGHT INCRIMINATE THEM AND THE RIGHT TO

4    KNOW THAT ANYTHING THEY SAY MIGHT BE USED AGAINST THEM.

5    THE U.S. ATTORNEYS ARE CHARGED WITH THE OBLIGATION,

6    WHEN THEY'RE AWARE OF IT, OF ADVISING PEOPLE OF THIS RIGHT

7    BEFORE THEY QUESTION THEM.  BUT BEAR THAT IN MIND.

8          IF A WITNESS DOES EXERCISE THE RIGHT AGAINST

9    SELF-INCRIMINATION, THEN THE GRAND JURY SHOULD NOT HOLD THAT

10   AS ANY PREJUDICE OR BIAS AGAINST THAT WITNESS.  IT CAN PLAY NO

11   PART IN THE RETURN OF AN INDICTMENT AGAINST THE WITNESS.  IN

12   OTHER WORDS, THE MERE EXERCISE OF THE PRIVILEGE AGAINST

13   SELF-INCRIMINATION, WHICH ALL OF US HAVE AS UNITED STATES

14   RESIDENTS, SHOULD NOT FACTOR INTO YOUR DETERMINATION OF

15   WHETHER THERE'S PROBABLE CAUSE TO GO FORWARD IN THIS CASE.

16   YOU MUST RESPECT THAT DETERMINATION BY THE PERSON AND NOT USE

17   IT AGAINST THEM.

18          IT'S AN UNCOMMON SITUATION THAT YOU'LL FACE WHEN

19   SOMEBODY DOES CLAIM THE PRIVILEGE AGAINST SELF-INCRIMINATION.

20   THAT'S BECAUSE USUALLY AT THE TIME A PERSON IS SUBPOENAED, IF

21   THERE'S A PROSPECT THAT THEY'RE GOING TO CLAIM THE PRIVILEGE,

22   THE U.S. ATTORNEY IS PUT ON NOTICE OF THAT BEFOREHAND EITHER

23   BY THE PERSON HIMSELF OR HERSELF OR MAYBE A LAWYER

24   REPRESENTING THE PERSON.

25          IN MY EXPERIENCE, MOST OF THE TIME THE U.S. ATTORNEY

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

18

1   WILL NOT THEN CALL THE PERSON IN FRONT OF YOU BECAUSE IT WOULD

2   BE TO NO EFFECT TO CALL THEM AND HAVE THEM ASSERT THEIR 5TH

3   AMENDMENT PRIVILEGE.  BUT IT SOMETIMES DOES COME UP.  IT

4   SOMETIMES HAPPENS.  SOMETIMES THERE'S A QUESTION OF WHETHER

5   THE PERSON HAS A BONA FIDE PRIVILEGE AGAINST

6   SELF-INCRIMINATION.  THAT'S A MATTER FOR THE COURT TO

7   DETERMINE IN ANCILLARY PROCEEDINGS.  OR THE U.S. ATTORNEY MAY

8   BE UNAWARE OF A PERSON'S INCLINATION TO ASSERT THE 5TH.  SO IT

9   MAY COME UP IN FRONT OF YOU.  IT DOESN'T ALWAYS COME UP.

10          AS I MENTIONED TO YOU IN MY PRELIMINARY REMARKS,

11   WITNESSES ARE NOT PERMITTED TO HAVE A LAWYER WITH THEM IN THE

12   GRAND JURY ROOM.  THE LAW DOESN'T PERMIT A WITNESS SUMMONED

13   BEFORE THE GRAND JURY TO BRING THE LAWYER WITH THEM, ALTHOUGH

14   WITNESSES DO HAVE A RIGHT TO CONFER WITH THEIR LAWYERS DURING

15   THE COURSE OF GRAND JURY INVESTIGATION PROVIDED THE CONFERENCE

16   OCCURS OUTSIDE THE GRAND JURY ROOM.

17          YOU MAY FACE A SITUATION WHERE A WITNESS SAYS "I'D

18   LIKE TO TALK TO MY LAWYER BEFORE I ANSWER THAT QUESTION," IN

19   WHICH CASE THE PERSON WOULD LEAVE THE ROOM, CONSULT WITH THE

20   LAWYER, AND THEN COME BACK INTO THE ROOM WHERE FURTHER ACTION

21   WOULD TAKE PLACE.

22          APPEARANCES BEFORE A GRAND JURY SOMETIMES PRESENT

23   COMPLEX LEGAL PROBLEMS THAT REQUIRE THE ASSISTANCE OF LAWYERS.

24   YOU'RE NOT TO DRAW ANY ADVERSE INFERENCE IF A WITNESS DOES ASK

25   TO LEAVE THE ROOM TO SPEAK TO HIS LAWYER OR HER LAWYER AND

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

19

1   THEN LEAVES FOR THAT PURPOSE.

2              ORDINARILY, NEITHER THE ACCUSED OR ANY WITNESS ON

3   THE ACCUSED'S BEHALF WILL TESTIFY IN THE GRAND JURY SESSION.

4   BUT UPON THE REQUEST OF AN ACCUSED, PREFERABLY IN WRITING, YOU

5   MAY AFFORD THE ACCUSED AN OPPORTUNITY TO APPEAR IN FRONT OF

6   YOU.

7              AS I'VE SAID, THESE PROCEEDINGS TEND TO BE ONE-SIDED

8   NECESSARILY.  THE PROSECUTOR IS ASKING YOU TO RETURN AN

9   INDICTMENT TO A CRIMINAL CHARGE, AND THEY'LL MUSTER THE

10  EVIDENCE THAT THEY HAVE THAT THEY BELIEVE SUPPORTS PROBABLE

11  CAUSE AND PRESENT THAT TO YOU.  BECAUSE IT'S NOT A FULL-BLOWN

12  TRIAL, YOU'RE LIKELY IN MOST CASES NOT TO HEAR THE OTHER SIDE

13  OF THE STORY, IF THERE IS ANOTHER SIDE TO THE STORY.  THERE'S

14  NO PROVISION OF LAW THAT ALLOWS AN ACCUSED, FOR EXAMPLE, TO

15  CONTEST THE MATTER IN FRONT OF THE GRAND JURY.

16             IT MAY HAPPEN, AS I SAID, THAT AN ACCUSED MAY ASK TO

17  APPEAR IN FRONT OF YOU.  BECAUSE THE APPEARANCE OF SOMEONE

18  ACCUSED OF A CRIME MAY RAISE COMPLICATED LEGAL PROBLEMS, YOU

19  SHOULD SEEK THE U.S. ATTORNEY'S ADVICE AND COUNSEL, IF

20  NECESSARY, AND THAT OF THE COURT BEFORE ALLOWING THAT.

21             BEFORE ANY ACCUSED PERSON IS ALLOWED TO TESTIFY,

22  THEY MUST BE ADVISED OF THEIR RIGHTS, AND YOU SHOULD BE

23  COMPLETELY SATISFIED THAT THEY UNDERSTAND WHAT THEY'RE DOING.

24             YOU'RE NOT REQUIRED TO SUMMON WITNESSES WHICH AN

25  ACCUSED PERSON MAY WANT YOU TO HAVE EXAMINED UNLESS PROBABLE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

20

1   CAUSE FOR AN INDICTMENT MAY BE EXPLAINED AWAY BY THE TESTIMONY

2   OF THOSE WITNESSES.

3          NOW, AGAIN, THIS EMPHASIZES THE DIFFERENCE BETWEEN

4   THE FUNCTION OF THE GRAND JURY AND THE TRIAL JURY.  YOU'RE ALL

5   ABOUT PROBABLE CAUSE.  IF YOU THINK THAT THERE'S EVIDENCE OUT

6   THERE THAT MIGHT CAUSE YOU TO SAY "WELL, I DON'T THINK

7   PROBABLE CAUSE EXISTS," THEN IT'S INCUMBENT UPON YOU TO HEAR

8   THAT EVIDENCE AS WELL.  AS I TOLD YOU, IN MOST INSTANCES, THE

9   U.S. ATTORNEYS ARE DUTY-BOUND TO PRESENT EVIDENCE THAT CUTS

10  AGAINST WHAT THEY MAY BE ASKING YOU TO DO IF THEY'RE AWARE OF

11  THAT EVIDENCE.

12         THE DETERMINATION OF WHETHER A WITNESS IS TELLING

13  THE TRUTH IS SOMETHING FOR YOU TO DECIDE.  NEITHER THE COURT

14  NOR THE PROSECUTORS NOR ANY OFFICERS OF THE COURT MAY MAKE

15  THAT DETERMINATION FOR YOU.  IT'S THE EXCLUSIVE PROVINCE OF

16  GRAND JURORS TO DETERMINE WHO IS CREDIBLE AND WHO MAY NOT BE.

17         FINALLY, LET ME TELL YOU THIS:  THERE'S ANOTHER

18  DIFFERENCE BETWEEN OUR GRAND JURY PROCEDURE HERE AND

19  PROCEDURES YOU MAY BE FAMILIAR WITH HAVING SERVED ON STATE

20  TRIAL JURIES OR FEDERAL TRIAL JURIES OR EVEN ON THE STATE

21  GRAND JURY; HEARSAY TESTIMONY, THAT IS, TESTIMONY AS TO FACTS

22  NOT PERSONALLY KNOWN BY THE WITNESS, BUT WHICH THE WITNESS HAS

23  BEEN TOLD OR RELATED BY OTHER PERSONS MAY BE DEEMED BY YOU

24  PERSUASIVE AND MAY PROVIDE A BASIS FOR RETURNING AN INDICTMENT

25  AGAINST AN ACCUSED.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   WHAT I MEAN BY THAT IS IF IT'S A FULL-BLOWN TRIAL

2   WHERE THE RULES OF EVIDENCE APPLY -- AND ALL OF US ARE

3   FAMILIAR WITH THIS TERM "HEARSAY EVIDENCE."  GENERALLY, IT

4   FORBIDS SOMEBODY FROM REPEATING WHAT SOMEONE ELSE TOLD THEM

5   OUTSIDE OF COURT.  THERE'S A MILLION EXCEPTIONS TO THE

6   HEARSAY RULE, BUT THAT'S THE GIST OF THE RULE.

7   USUALLY, WE INSIST ON THE SPEAKER OF THE WORDS TO

8   COME IN SO THAT WE CAN KNOW THE CONTEXT OF IT.  THAT RULE

9   DOESN'T APPLY IN THE GRAND JURY CONTEXT.  BECAUSE IT'S A

10  PRELIMINARY PROCEEDING, BECAUSE ULTIMATELY GUILT OR INNOCENCE

11  IS NOT BEING DETERMINED, THE EVIDENTIARY STANDARDS ARE

12  RELAXED.  THE PROSECUTORS ARE ENTITLED TO PUT ON HEARSAY

13  EVIDENCE.

14  HOW DOES THAT PLAY OUT IN REAL LIFE?  WELL, YOU'RE

15  GOING TO BE HEARING A LOT OF BORDER TYPE CASES.  IT DOESN'T

16  MAKE SENSE, IT'S NOT EFFICIENT, IT'S NOT COST-EFFECTIVE TO

17  PULL ALL OF OUR BORDER GUARDS OFF THE BORDER TO COME UP AND

18  TESTIFY.  WHO IS LEFT GUARDING THE BORDER, THEN?

19  WHAT THEY'VE DONE IN THE BORDER CASES IN PARTICULAR

20  IF THEY USUALLY HAVE A SUMMARY WITNESS; A WITNESS FROM, FOR

21  EXAMPLE, BORDER PATROL OR CUSTOMS WHO WILL TALK TO THE PEOPLE

22  OR READ THE REPORTS OF THE PEOPLE WHO ACTUALLY MADE THE

23  ARREST.  THAT PERSON WILL COME IN AND TESTIFY ABOUT WHAT

24  HAPPENED.  THE PERSON WON'T HAVE FIRST-HAND KNOWLEDGE, BUT

25  THEY'LL BE RELIABLY INFORMED BY THE PERSON WITH FIRST-HAND

PDF created with pdfFactory trial version www.pdffactory.com

22

1    KNOWLEDGE OF WHAT OCCURRED, AND THEY'LL BE THE WITNESS BEFORE

2    THE GRAND JURY.

3           YOU SHOULD EXPECT AND COUNT ON THE FACT THAT YOU'RE

4    GOING TO HEAR EVIDENCE IN THE FORM OF HEARSAY THAT WOULD NOT

5    BE ADMISSIBLE IF THIS CASE GOES FORWARD TO TRIAL, BUT IS

6    ADMISSIBLE AT THE GRAND JURY STAGE.

7           AFTER YOU'VE HEARD ALL OF THE EVIDENCE THAT THE U.S.

8    ATTORNEY INTENDS TO PRESENT OR THAT YOU WANT TO HEAR IN A

9    PARTICULAR MATTER, YOU'RE THEN CHARGED WITH THE OBLIGATION OF

10   DELIBERATING TO DETERMINE WHETHER THE ACCUSED PERSON OUGHT TO

11   BE INDICTED.  NO ONE OTHER THAN YOUR OWN MEMBERS, THE MEMBERS

12   OF THE GRAND JURY, IS TO BE PRESENT IN THE GRAND JURY ROOM

13   WHILE YOU'RE DELIBERATING.

14          WHAT THAT MEANS IS THE COURT REPORTER, THE ASSISTANT

15   U.S. ATTORNEY, ANYONE ELSE, THE INTERPRETER WHO MAY HAVE BEEN

16   PRESENT TO INTERPRET FOR A WITNESS, MUST GO OUT OF THE ROOM,

17   AND THE PROCEEDING MUST GO FORWARD WITH ONLY GRAND JURORS

18   PRESENT DURING THE DELIBERATION AND VOTING ON AN INDICTMENT.

19          YOU HEARD ME EXPLAIN EARLIER THAT AT VARIOUS TIMES

20   DURING THE PRESENTATION OF MATTERS BEFORE YOU, OTHER PEOPLE

21   MAY BE PRESENT IN THE GRAND JURY.  THIS IS PERFECTLY

22   ACCEPTABLE.  THE RULE THAT I HAVE JUST READ TO YOU ABOUT YOUR

23   PRESENCE ALONE IN THE GRAND JURY ROOM APPLIES ONLY DURING

24   DELIBERATION AND VOTING ON INDICTMENTS.

25          TO RETURN AN INDICTMENT CHARGING SOMEONE WITH AN

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

23

1  OFFENSE, IT'S NOT NECESSARY, AS I MENTIONED MANY TIMES, THAT

2  YOU FIND PROOF BEYOND A REASONABLE DOUBT.  THAT'S THE TRIAL

3  STANDARD, NOT THE GRAND JURY STANDARD.  YOUR TASK IS TO

4  DETERMINE WHETHER THE GOVERNMENT'S EVIDENCE, AS PRESENTED TO

5  YOU, IS SUFFICIENT TO CONCLUDE THAT THERE'S PROBABLE CAUSE TO

6  BELIEVE THAT THE ACCUSED IS GUILTY OF THE PROPOSED OR CHARGED

7  OFFENSE.

8         I EXPLAINED TO YOU WHAT THAT STANDARD MEANS.  LET

9  ME, AT THE RISK OF BORING YOU, TELL YOU ONE MORE TIME.

10         PROBABLE CAUSE MEANS THAT YOU HAVE AN HONESTLY HELD

11  CONSCIENTIOUS BELIEF AND THAT THE BELIEF IS REASONABLE THAT A

12  FEDERAL CRIME WAS COMMITTED AND THAT THE PERSON TO BE INDICTED

13  WAS SOMEHOW ASSOCIATED WITH THE COMMISSION OF THAT CRIME.

14  EITHER THEY COMMITTED IT THEMSELVES OR THEY HELPED SOMEONE

15  COMMIT IT OR THEY WERE PART OF A CONSPIRACY, AN ILLEGAL

16  AGREEMENT, TO COMMIT THAT CRIME.

17         TO PUT IT ANOTHER WAY, YOU SHOULD VOTE TO INDICT

18  WHEN THE EVIDENCE PRESENTED TO YOU IS SUFFICIENTLY STRONG TO

19  WARRANT A REASONABLE PERSON TO BELIEVE THAT THE ACCUSED IS

20  PROBABLY GUILTY OF THE OFFENSE WHICH IS PROPOSED.

21         EACH GRAND JUROR HAS THE RIGHT TO EXPRESS VIEWS ON

22  THE MATTER UNDER CONSIDERATION.  AND ONLY AFTER ALL GRAND

23  JURORS HAVE BEEN GIVEN A FULL OPPORTUNITY TO BE HEARD SHOULD

24  YOU VOTE ON THE MATTER BEFORE YOU.  YOU MAY DECIDE AFTER

25  DELIBERATION AMONG YOURSELVES THAT YOU NEED MORE EVIDENCE,

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

24

1    THAT MORE EVIDENCE SHOULD BE CONSIDERED BEFORE A VOTE IS

2    TAKEN.  IN SUCH CASES, THE U.S ATTORNEY OR THE ASSISTANT U.S.

3    ATTORNEY CAN BE DIRECTED TO SUBPOENA ADDITIONAL DOCUMENTS OR

4    WITNESSES FOR YOU TO CONSIDER IN ORDER TO MAKE YOUR

5    DETERMINATION. Case 3:07-cr-01319-WQH    Document 26-3    Filed 06/18/2007    Page 25 of 33

6         WHEN YOU'VE DECIDED TO VOTE, THE FOREPERSON SHOULD

7    KEEP A RECORD OF THE VOTE.  THAT RECORD SHOULD BE FILED WITH

8    THE CLERK OF THE COURT.  THE RECORD DOESN'T INCLUDE THE NAMES

9    OF THE JURORS OR HOW THEY VOTED, BUT ONLY THE NUMBER OF VOTES

10   FOR THE INDICTMENT.  SO IT'S AN ANONYMOUS VOTE.  YOU'LL KNOW

11   AMONG YOURSELVES WHO VOTED WHICH WAY, BUT THAT INFORMATION

12   DOES NOT GET CAPTURED OR RECORDED, JUST THE NUMBER OF PEOPLE

13   VOTING FOR INDICTMENT.

14        IF 12 OR MORE MEMBERS OF THE GRAND JURY AFTER

15   DELIBERATION BELIEVE THAT AN INDICTMENT IS WARRANTED, THEN

16   YOU'LL REQUEST THE UNITED STATES ATTORNEY TO PREPARE A FORMAL

17   WRITTEN INDICTMENT IF ONE'S NOT ALREADY BEEN PREPARED AND

18   PRESENTED TO YOU.  IN MY EXPERIENCE, MOST OF THE TIME THE U.S.

19   ATTORNEY WILL SHOW UP WITH THE WITNESSES AND WILL HAVE THE

20   PROPOSED INDICTMENT WITH THEM.  SO YOU'LL HAVE THAT TO

21   CONSIDER.  YOU'LL KNOW EXACTLY WHAT THE PROPOSED CHARGES ARE.

22        THE INDICTMENT WILL SET FORTH THE DATE AND THE PLACE

23   OF THE ALLEGED OFFENSE AND THE CIRCUMSTANCES THAT THE U.S.

24   ATTORNEY BELIEVES MAKES THE CONDUCT CRIMINAL.  IT WILL

25   IDENTIFY THE CRIMINAL STATUTES THAT HAVE ALLEGEDLY BEEN

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

25

1    VIOLATED.

2            THE FOREPERSON, UPON THE GRAND JURY VOTING TO RETURN

3    THE INDICTMENT, WILL THEN ENDORSE OR SIGN THE INDICTMENT,

4    WHAT'S CALLED A TRUE BILL OF INDICTMENT.  THERE'S A SPACE

5    PROVIDED FOR THE FOREPERSON TO WRITE OR SIGN.

6    THE FOREPERSON IS TO SIGN THE INDICTMENT IF THE GRAND JURY

7    BELIEVES THAT THERE'S PROBABLE CAUSE.  A TRUE BILL SIGNIFIES

8    THAT 12 OR MORE GRAND JURORS HAVE AGREED THAT THE CASE OUGHT

9    TO GO FORWARD WITH PROBABLE CAUSE TO BELIEVE THAT THE PERSON

10   PROPOSED FOR THE CHARGE IS GUILTY OF THE CRIME.

11           IT'S THE DUTY OF THE FOREPERSON TO ENDORSE OR SIGN

12   EVERY INDICTMENT VOTED ON BY AT LEAST 12 MEMBERS EVEN IF THE

13   FOREPERSON HAS VOTED AGAINST RETURNING THE INDICTMENT.  SO IF

14   YOU'VE BEEN DESIGNATED A FOREPERSON OR AN ASSISTANT

15   FOREPERSON, EVEN IF YOU VOTED THE OTHER WAY OR YOU'RE

16   OUT-VOTED, IF THERE'S AT LEAST 12 WHO VOTED FOR THE

17   INDICTMENT, THEN YOU MUST SIGN THE INDICTMENT.

18           IF YOU WERE THE 12 MEMBERS OF THE GRAND JURY WHO

19   VOTED IN FAVOR OF THE INDICTMENT, THEN THE FOREPERSON WILL

20   ENDORSE THE INDICTMENT WITH THESE WORDS:  "NOT A TRUE BILL."

21   THEY'LL RETURN IT TO THE COURT.  THE COURT WILL IMPOUND IT.

22           THE INDICTMENTS WHICH HAVE BEEN ENDORSED AS A TRUE

23   BILL ARE PRESENTED EITHER TO ONE OF OUR MAGISTRATE JUDGES OR

24   TO A DISTRICT JUDGE IN OPEN COURT BY YOUR FOREPERSON AT THE

25   CONCLUSION OF EACH SESSION OF THE GRAND JURY.  THIS IS THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

26

Case 3:07-cr-0319-WQH    Document 26-3    Filed 06/18/2007    Page 27 of 33

1    PROCEDURE THAT YOU HEARD ME ALLUDE TO.  IN THE ABSENCE OF THE

2    FOREPERSON, THE DEPUTY FOREPERSON SHALL PERFORM ALL THE

3    FUNCTIONS AND DUTIES OF THE FOREPERSON.

4         LET ME EMPHASIZE AGAIN IT'S EXTREMELY IMPORTANT FOR

5    THOSE OF YOU WHO ARE GRAND JURORS TO REALIZE THAT UNDER OUR

6    CONSTITUTION, THE GRAND JURY IS AN INDEPENDENT BODY.  IT'S

7    INDEPENDENT OF THE UNITED STATES ATTORNEY.  IT'S NOT AN ARM OR

8    AN AGENT OF FEDERAL BUREAU OF INVESTIGATION OF THE DRUG

9    ENFORCEMENT ADMINISTRATION, THE IRS, OR ANY OTHER GOVERNMENT

10   AGENCY CHARGED WITH PROSECUTING THE CRIME.

11        I USED THE CHARACTERIZATION EARLIER THAT YOU STAND

12   AS A BUFFER BETWEEN OUR GOVERNMENT'S ABILITY TO ACCUSE SOMEONE

13   OF A CRIME AND THEN PUTTING THAT PERSON THROUGH THE BURDEN OF

14   STANDING TRIAL.  YOU ACT AS AN INDEPENDENT BODY OF CITIZENS.

15        IN RECENT YEARS, THERE HAS BEEN CRITICISM OF THE

16   INSTITUTION OF THE GRAND JURY.  THE CRITICISM GENERALLY IS THE

17   GRAND JURY ACTS AS RUBBER STAMPS AND APPROVES PROSECUTIONS

18   THAT ARE BROUGHT BY THE GOVERNMENT WITHOUT THOUGHT.

19        INTERESTINGLY ENOUGH, IN MY DISCUSSION WITH

20   PROSPECTIVE GRAND JURORS, WE HAD ONE FELLOW WHO SAID, "YEAH,

21   THAT'S THE WAY I THINK IT OUGHT TO BE."  WELL, THAT'S NOT THE

22   WAY IT IS.  AS A PRACTICAL MATTER, YOU WILL WORK CLOSELY WITH

23   GOVERNMENT LAWYERS.  THE U.S. ATTORNEY AND THE ASSISTANT U.S.

24   ATTORNEYS WILL PROVIDE YOU WITH IMPORTANT SERVICES AND HELP

25   YOU FIND YOUR WAY WHEN YOU'RE CONFRONTED WITH COMPLEX LEGAL

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

27

1    MATTERS.  IT'S ENTIRELY PROPER THAT YOU SHOULD RECEIVE THE

2    ASSISTANCE FROM THE GOVERNMENT LAWYERS.

3          BUT AT THE END OF THE DAY, THE DECISION ABOUT

4    WHETHER A CASE GOES FORWARD AND AN INDICTMENT SHOULD BE

5    RETURNED IS YOURS AND YOURS ALONE.  IF PAST EXPERIENCE IS ANY

Case 3:07-cr-01319-WQH    Document 26-3    Filed 06/18/2007    Page 28 of 33

6    INDICATION OF WHAT TO EXPECT IN THE FUTURE, THEN YOU CAN

7    EXPECT THAT THE U.S. ATTORNEYS THAT WILL APPEAR IN FRONT OF

8    YOU WILL BE CANDID, THEY'LL BE HONEST, THAT THEY'LL ACT IN

9    GOOD FAITH IN ALL MATTERS PRESENTED TO YOU.

10          HOWEVER, AS I SAID, ULTIMATELY YOU HAVE TO DEPEND ON

11   YOUR INDEPENDENT JUDGMENT IN MAKING THE DECISION THAT YOU ARE

12   CHARGED WITH MAKING AS GRAND JURORS.  YOU'RE NOT AN ARM OF THE

13   U.S. ATTORNEY'S OFFICE.  YOU'RE NOT AN ARM OF ANY GOVERNMENT

14   AGENCY.  THE GOVERNMENT'S LAWYERS ARE PROSECUTORS, AND YOU'RE

15   NOT.

16          IF THE FACTS SUGGEST TO YOU THAT YOU SHOULD NOT

17   INDICT, THEN YOU SHOULD NOT DO SO EVEN IN THE FACE OF

18   OPPOSITION OR STATEMENTS OR ARGUMENTS FROM ONE OF THE

19   ASSISTANT UNITED STATES ATTORNEYS.  YOU SHOULD NOT SURRENDER

20   AN HONESTLY OR CONSCIOUSLY HELD BELIEF WITHOUT THE WEIGHT OF

21   THE EVIDENCE AND SIMPLY DEFER TO THE U.S. ATTORNEY.  THAT'S

22   YOUR DECISION TO MAKE.

23          JUST AS YOU MUST MAINTAIN YOUR INDEPENDENCE IN YOUR

24   DEALINGS WITH GOVERNMENT LAWYERS, YOUR DEALINGS WITH THE COURT

25   MUST BE ON A FORMAL BASIS, ALSO.  IF YOU HAVE A QUESTION FOR

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

28

1   THE COURT OR A DESIRE TO MAKE A PRESENTMENT OR A RETURN OF AN

2   INDICTMENT TO THE COURT, THEN YOU MAY CONTACT ME THROUGH MY

3   CLERK.  YOU'LL BE ABLE TO ASSEMBLE IN THE COURTROOM OFTENTIMES

4   FOR THESE PURPOSES.

Case 3:07-cr-01319-WQH     Document 26-3     Filed 06/18/2007     Page 29 of 33

5   LET ME TELL YOU ALSO THAT EACH GRAND JUROR IS

6   DIRECTED TO REPORT IMMEDIATELY TO THE COURT ANY ATTEMPT BY

7   ANYBODY UNDER ANY PRETENSE WHATSOEVER TO ADDRESS YOU OR

8   CONTACT YOU FOR THE PURPOSE OF TRYING TO GAIN INFORMATION

9   ABOUT WHAT'S GOING ON IN FRONT OF THE GRAND JURY.  THAT SHOULD

10  NOT HAPPEN.  IF IT DOES HAPPEN, I SHOULD BE INFORMED OF THAT

11  IMMEDIATELY BY ANY OF YOU, COLLECTIVELY OR INDIVIDUALLY.  IF

12  ANY PERSON CONTACTS YOU OR ATTEMPTS TO INFLUENCE YOU IN ANY

13  MANNER IN CARRYING OUT YOUR DUTIES AS A GRAND JUROR, LET ME

14  KNOW ABOUT IT.

15          LET ME TALK A LITTLE BIT MORE ABOUT THE OBLIGATION

16  OF SECRECY, WHICH I'VE MENTIONED AND ALLUDED TO.  AS I TOLD

17  YOU BEFORE, THE HALLMARK OF THE GRAND JURY, PARTICULARLY OUR

18  FEDERAL GRAND JURY, IS THAT IT OPERATES SECRETLY.  IT OPERATES

19  IN SECRECY, AND ITS PROCEEDINGS ARE ENTIRELY SECRET.

20          YOUR PROCEEDINGS AS GRAND JURORS ARE ALWAYS SECRET,

21  AND THEY MUST REMAIN SECRET PERMANENTLY UNLESS AND UNTIL THE

22  COURT DETERMINES OTHERWISE.  YOU CAN'T RELATE TO YOUR FAMILY,

23  THE NEWS MEDIA, TELEVISION REPORTERS, OR TO ANYONE WHAT

24  HAPPENED IN FRONT OF THE GRAND JURY.  IN FACT, TO DO SO IS TO

25  COMMIT A CRIMINAL OFFENSE.  YOU COULD BE HELD CRIMINALLY

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

29

Case 3:07-cr-01319-WQH    Document 26-3    Filed 06/18/2007    Page 30 of 33

1    LIABLE FOR REVEALING WHAT OCCURRED IN FRONT OF THE GRAND JURY.

2         THERE ARE SEVERAL IMPORTANT REASONS WHY WE DEMAND

3    SECRECY IN THE INSTITUTION OF THE GRAND JURY.  FIRST -- AND I

4    MENTIONED THIS, AND THIS IS OBVIOUS -- THE PREMATURE

5    DISCLOSURE OF INFORMATION THAT THE GRAND JURY IS ACTING ON

6    COULD VERY WELL FRUSTRATE THE ENDS OF JUSTICE IN PARTICULAR

7    CASES.  IT MIGHT GIVE AN OPPORTUNITY FOR SOMEONE WHO'S ACCUSED

8    OF A CRIME TO ESCAPE OR BECOME A FUGITIVE OR TO DESTROY

9    EVIDENCE THAT MIGHT OTHERWISE BE UNCOVERED LATER ON.  YOU

10   DON'T WANT TO DO THAT.

11        IN THE COURSE OF AN INVESTIGATION, IT'S ABSOLUTELY

12   IMPERATIVE THAT THE INVESTIGATION AND THE FACTS OF THE

13   INVESTIGATION REMAIN SECRET, AND YOU SHOULD KEEP THAT FOREMOST

14   IN YOUR MIND.  ALSO, IF THE TESTIMONY OF A WITNESS IS

15   DISCLOSED, THE WITNESS MAY BE SUBJECT TO INTIMIDATION OR

16   SOMETIMES RETALIATION OR BODILY INJURY BEFORE THE WITNESS IS

17   ABLE TO TESTIFY.  IT IS SOMETHING THAT THE LAW ENFORCEMENT --

18   IT'S SOMETIMES THE CASE THAT LAW ENFORCEMENT WILL TELL A

19   WITNESS WHO IS COOPERATING WITH AN INVESTIGATION THAT THEIR

20   SECRECY IS GUARANTEED.  IT SOMETIMES TAKES THAT KIND OF

21   ASSURANCE FROM THE POLICE OR LAW ENFORCEMENT AGENTS TO GET A

22   WITNESS TO TELL WHAT THEY KNOW.  AND THAT GUARANTEE CAN ONLY

23   BE SECURED IF YOU MAINTAIN THE OBLIGATION OF SECRECY.

24        THE GRAND JURY IS FORBIDDEN BY LAW FROM DISCLOSING

25   ANY INFORMATION ABOUT THE GRAND JURY PROCESS WHATSOEVER.  IT'S

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

30

1  ON THE BASIS SOMETIMES OF REPRESENTATIONS LIKE THAT RELUCTANT

2  WITNESSES DO COME FORWARD.  AGAIN, IT UNDERSCORES THE

3  IMPORTANCE OF SECRECY.

4          AS I'VE ALSO MENTIONED, THE REQUIREMENT OF SECRECY

5  PROTECTS INNOCENT PEOPLE WHO MAY HAVE COME UNDER

6  INVESTIGATION, BUT WHO ARE CLEARED BY THE ACTIONS OF THE GRAND

7  JURY.  IT'S A TERRIBLE THING TO BE IMPROPERLY ACCUSED OF A

8  CRIME.  IT'S LIKE A SCARLET LETTER THAT PEOPLE SOMETIMES WEAR

9  FOREVER.  IT'S WORSE IF THE CRIME OR THE ACCUSATION NEVER

10  BECOMES FORMAL.  JUST THE IDEA THAT SOMEONE IS UNDER

11  INVESTIGATION CAN HAVE DISASTROUS CONSEQUENCES FOR THAT PERSON

12  OR HIS OR HER BUSINESS OR HIS OR HER FAMILY.  THIS IS ANOTHER

13  IMPORTANT REASON WHY THE GRAND JURY PROCEEDINGS MUST REMAIN

14  SECRET.

15          IN THE EYES OF SOME PEOPLE, INVESTIGATION BY THE

16  GRAND JURY ALONE CARRIES WITH IT THE STIGMA OR SUGGESTION OF

17  GUILT.  SO GREAT INJURY CAN BE DONE TO A PERSON'S GOOD NAME

18  EVEN THOUGH ULTIMATELY YOU DECIDE THAT THERE'S NO EVIDENCE

19  SUPPORTING AN INDICTMENT OF THE PERSON.

20          TO ENSURE THE SECRECY OF THE GRAND JURY PROCEEDINGS,

21  THE LAW PROVIDES THAT ONLY AUTHORIZED PEOPLE MAY BE IN THE

22  GRAND JURY ROOM WHILE EVIDENCE IS BEING PRESENTED.  AS I'VE

23  MENTIONED TO YOU NOW SEVERAL TIMES, THE ONLY PEOPLE WHO MAY BE

24  PRESENT DURING THE FUNCTIONING OF THE GRAND JURY ARE THE GRAND

25  JURORS THEMSELVES, THE UNITED STATES ATTORNEY OR AN ASSISTANT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    WHO'S PRESENTING THE CASE, A WITNESS WHO IS THEN UNDER

2    EXAMINATION, A COURT REPORTER, AND AN INTERPRETER, IF

3    NECESSARY.  ALL THE OTHERS EXCEPT THE GRAND JURORS GO OUT

4    DURING THE DELIBERATION AND VOTING.

Case 3:07-cr-01319-WQH    Document 26-3    Filed 06/18/2007    Page 32 of 33

5              YOU MAY DISCLOSE TO THE U.S. ATTORNEY WHO IS

6    ASSISTING THE GRAND JURY CERTAIN INFORMATION.  AS I SAID, IF

7    YOU HAVE QUESTIONS, IF GRAND JURORS HAVE QUESTIONS THAT THEY

8    WANT ANSWERED, OBVIOUSLY THAT INFORMATION IS TO BE CONVEYED TO

9    THE U.S. ATTORNEY TO GET THE QUESTIONS ANSWERED.

10             BUT YOU SHOULD NOT DISCLOSE THE CONTEXT OF YOUR

11    DELIBERATIONS OR THE VOTE OF ANY PARTICULAR GRAND JUROR TO

12    ANYONE, EVEN THE GOVERNMENT LAWYERS, ONCE THE VOTE HAS BEEN

13    DONE.  THAT'S ONLY THE BUSINESS OF THE GRAND JURY.  IN OTHER

14    WORDS, YOU'RE NOT TO INFORM THE GOVERNMENT LAWYER WHO VOTED

15    ONE WAY ON THE INDICTMENT AND WHO VOTED THE OTHER WAY.

16             LET ME CONCLUDE NOW -- I APPRECIATE YOUR PATIENCE,

17    AND IT'S BEEN A LONG SESSION THIS MORNING -- BY SAYING THAT

18    THE IMPORTANCE OF THE SERVICE YOU PERFORM IS DEMONSTRATED BY

19    THE VERY IMPORTANT AND COMPREHENSIVE OATH WHICH YOU TOOK A

20    SHORT WHILE AGO.  IT'S AN OATH THAT IS ROOTED IN OUR HISTORY

21    AS A COUNTRY.  THOUSANDS OF PEOPLE BEFORE YOU HAVE TAKEN A

22    SIMILAR OATH.  AND AS GOOD CITIZENS, YOU SHOULD BE PROUD TO

23    HAVE BEEN SELECTED TO ASSIST IN THE ADMINISTRATION OF JUSTICE.

24             IT HAS BEEN MY PLEASURE TO MEET YOU.  I WOULD BE

25    HAPPY TO SEE YOU IN THE FUTURE IF THE NEED ARISES.  AT THIS

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

32

1  POINT, THE U.S. ATTORNEY, MR. ROBINSON, WILL ASSIST YOU IN

2  FURTHER ORGANIZATION.  SO THIS PART OF THE ADMINISTRATION OF

3  YOUR RESPONSIBILITY AS GRAND JURORS INVOLVING THE COURT IS

4  OVER.

Case 3:07-cr-01319-WQH    Document 26-3    Filed 06/18/2007    Page 33 of 33

5  IT MIGHT BE APPROPRIATE TO TAKE A BREAK BEFORE WE GO

6  ON TO THE NEXT PROCEEDING.  I'VE HELD THESE FOLKS FOR A LONG

7  TIME.

8  LADIES AND GENTLEMEN, MY GREAT PLEASURE TO MEET ALL

9  OF YOU.  GOOD LUCK WITH YOUR GRAND JURY SERVICE.  I THINK

10  YOU'LL FIND IT REWARDING AND INTERESTING AND COMPELLING.

--oOo--

11

12

13

14

15  I HEREBY CERTIFY THAT THE TESTIMONY

16  ADDUCED IN THE FOREGOING MATTER IS

17  A TRUE RECORD OF SAID PROCEEDINGS.

18

19  _____

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

# APPENDIX 2

15

1

2

3

4

5

6

7

8

9

10          PROSPECTIVE JUROR:  MY NAME IS .

11  I LIVE IN SAN DIEGO IN THE MISSION HILLS AREA.  I'M RETIRED.

12  I WAS A CLINICAL SOCIAL WORKER.  I'M SINGLE.  NO CHILDREN.

13  I'VE BEEN CALLED FOR JURY SERVICE A NUMBER OF TIMES, BUT I'VE

14  NEVER ACTUALLY BEEN SELECTED AS A JUROR.  CAN I BE FAIR?  I'LL

15  TRY.  BECAUSE OF THE NATURE OF THE WORK THAT I DID, I HAVE

16  SOME FAIRLY STRONG OPINIONS ABOUT SOME OF THE PEOPLE WHO COME

17  INTO THE LEGAL SYSTEM.  BUT I WOULD TRY TO WORK WITH THAT.

18          THE COURT:  WE'RE ALL PRODUCTS OF OUR EXPERIENCE.

19  WE'RE NOT GOING TO TRY TO DISABUSE YOU OF EXPERIENCES OR

20  JUDGMENTS THAT YOU HAVE.  WHAT WE ASK IS THAT YOU NOT ALLOW

21  THOSE TO CONTROL INVARIABLY THE OUTCOME OF THE CASES COMING IN

22  FRONT OF YOU; THAT YOU LOOK AT THE CASES FRESH, YOU EVALUATE

23  THE CIRCUMSTANCES, LISTEN TO THE WITNESS TESTIMONY, AND THEN

24  MAKE AN INDEPENDENT JUDGMENT.

25          DO YOU THINK YOU CAN DO THAT?

16

1    PROSPECTIVE JUROR:  I'LL DO MY BEST.

2    THE COURT:  IS THERE A CERTAIN CATEGORY OF CASE THAT

3  YOU THINK MIGHT BE TROUBLESOME FOR YOU TO SIT ON THAT YOU'D BE

4  INSTINCTIVELY TILTING ONE WAY IN FAVOR OF INDICTMENT OR THE

5  OTHER WAY AGAINST INDICTING JUST BECAUSE OF THE NATURE OF THE

6  CASE?

7    PROSPECTIVE JUROR:  WELL, I HAVE SOME FAIRLY STRONG

8  FEELINGS REGARDING DRUG CASES.  I DO NOT BELIEVE THAT ANY

9  DRUGS SHOULD BE CONSIDERED ILLEGAL, AND I THINK WE'RE SPENDING

10  A LOT OF TIME AND ENERGY PERSECUTING AND PROSECUTING CASES

11  WHERE RESOURCES SHOULD BE DIRECTED IN OTHER AREAS.

12    I ALSO HAVE STRONG FEELINGS ABOUT IMMIGRATION CASES.

13  AGAIN, I THINK WE'RE SPENDING A LOT OF TIME PERSECUTING PEOPLE

14  THAT WE SHOULD NOT BE.

15    THE COURT:  WELL, LET ME TELL YOU, YOU'VE HIT ON THE

16  TWO TYPES OF CASES THAT ARE REALLY KIND OF THE STAPLE OF THE

17  WORK WE DO HERE IN THE SOUTHERN DISTRICT OF CALIFORNIA.  AS I

18  MENTIONED IN MY INITIAL REMARKS, OUR PROXIMITY TO THE BORDER

19  KIND OF MAKES US A FUNNEL FOR BOTH DRUG CASES AND IMMIGRATION

20  CASES.  YOU'RE GOING TO BE HEARING THOSE CASES I CAN TELL YOU

21  FOR SURE.  JUST AS DAY FOLLOWS NIGHT, YOU'RE HEAR CASES LIKE

22  THAT.

23    NOW, THE QUESTION IS CAN YOU FAIRLY EVALUATE THOSE

24  CASES?  JUST AS THE DEFENDANT ULTIMATELY IS ENTITLED TO A FAIR

25  TRIAL AND THE PERSON THAT'S ACCUSED IS ENTITLED TO A FAIR

17

1   APPRAISAL OF THE EVIDENCE OF THE CASE THAT'S IN FRONT OF YOU,

2   SO, TOO, IS THE UNITED STATES ENTITLED TO A FAIR JUDGMENT.  IF

3   THERE'S PROBABLE CAUSE, THEN THE CASE SHOULD GO FORWARD.  I

4   WOULDN'T WANT YOU TO SAY, "WELL, YEAH, THERE'S PROBABLE CAUSE.

5   BUT I STILL DON'T LIKE WHAT OUR GOVERNMENT IS DOING.  I

6   DISAGREE WITH THESE LAWS, SO I'M NOT GOING TO VOTE FOR IT TO

7   GO FORWARD."  IF THAT'S YOUR FRAME OF MIND, THEN PROBABLY YOU

8   SHOULDN'T SERVE.  ONLY YOU CAN TELL ME THAT.

9           PROSPECTIVE JUROR:  WELL, I THINK I MAY FALL IN THAT

10  CATEGORY.

11          THE COURT:  IN THE LATTER CATEGORY?

12          PROSPECTIVE JUROR:  YES.

13          THE COURT:  WHERE IT WOULD BE DIFFICULT FOR YOU TO

14  SUPPORT A CHARGE EVEN IF YOU THOUGHT THE EVIDENCE WARRANTED

15  IT?

16          PROSPECTIVE JUROR:  YES.

17          THE COURT:  I'M GOING TO EXCUSE YOU, THEN.  I

18  APPRECIATE YOUR HONEST ANSWERS.

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

24

PROSPECTIVE JUROR: MAY NAME IS ████████. I

LIVE IN SAN DIEGO. I'M A REAL ESTATE AGENT. NOT MARRIED. NO

KIDS. HAVE NOT SERVED. AND AS FAR AS BEING FAIR, IT KIND OF

DEPENDS UPON WHAT THE CASE IS ABOUT BECAUSE THERE IS A

DISPARITY BETWEEN STATE AND FEDERAL LAW.

THE COURT: IN WHAT REGARD?

PROSPECTIVE JUROR: SPECIFICALLY, MEDICAL

MARIJUANA.

THE COURT: WELL, THOSE THINGS -- THE CONSEQUENCES

OF YOUR DETERMINATION SHOULDN'T CONCERN YOU IN THE SENSE THAT

PENALTIES OR PUNISHMENT, THINGS LIKE THAT -- WE TELL TRIAL

JURORS, OF COURSE, THAT THEY CANNOT CONSIDER THE PUNISHMENT OR

25

1    THE CONSEQUENCE THAT CONGRESS HAS SET FOR THESE THINGS.  WE'D

2    ASK YOU TO ALSO ABIDE BY THAT.  WE WANT YOU TO MAKE A

3    BUSINESS-LIKE DECISION AND LOOK AT THE FACTS AND MAKE A

4    DETERMINATION OF WHETHER THERE WAS A PROBABLE CAUSE.

5         COULD YOU DO THAT?  COULD YOU PUT ASIDE STRONG

6    PERSONAL FEELINGS YOU MAY HAVE?

7         PROSPECTIVE JUROR:  IT DEPENDS.  I HAVE A VERY

8    STRONG OPINION ON IT.  WE LIVE IN THE STATE OF CALIFORNIA, NOT

9    FEDERAL CALIFORNIA.  THAT'S HOW I FEEL ABOUT IT VERY STRONGLY.

10        THE COURT:  WELL, I DON'T KNOW HOW OFTEN MEDICAL

11   MARIJUANA USE CASES COME UP HERE.  I DON'T HAVE A GOOD FEEL

12   FOR THAT.  MY INSTINCT IS THEY PROBABLY DON'T ARISE VERY

13   OFTEN.  BUT I SUPPOSE ONE OF THE SOLUTIONS WOULD BE IN A CASE

14   IMPLICATING MEDICAL USE OF MARIJUANA, YOU COULD RECUSE

15   YOURSELF FROM THAT CASE.

16        ARE YOU WILLING TO DO THAT?

17        PROSPECTIVE JUROR:  SURE.

18        THE COURT:  ALL OTHER CATEGORIES OF CASES YOU COULD

19   GIVE A FAIR, CONSCIENTIOUS JUDGMENT ON?

20        PROSPECTIVE JUROR:  FOR THE MOST PART, BUT I ALSO

21   FEEL THAT DRUGS SHOULD BE LEGAL.

22        THE COURT:  OUR LAWS ARE DIFFERENT FROM THAT.  AND

23   AS YOU HEARD ME EXPLAIN TO ████████████, A LOT OF THE CASES

24   THAT COME THROUGH IN OUR COURT ARE DRUG CASES.  YOU'LL BE

25   CALLED UPON TO EVALUATE THOSE CASES OBJECTIVELY AND THEN MAKE

COMPUTER-AIDED TRANSCRIPTION

26

1  THE TWO DETERMINATIONS THAT I STARTED OFF EXPLAINING TO

2  ▓▓▓▓▓▓▓▓  "DO I HAVE A REASONABLE BELIEF THAT A CRIME WAS

3  COMMITTED?  WHETHER I AGREE WITH WHETHER IT OUGHT TO BE A

4  CRIME OR NOT, DO I BELIEVE THAT A CRIME WAS COMMITTED AND THAT

5  THE PERSON THAT THE GOVERNMENT IS ASKING ME TO INDICT WAS

6  SOMEHOW INVOLVED IN THIS CRIME, EITHER COMMITTED IT OR HELPED

7  WITH IT?"

8      COULD YOU DO THAT IF YOU SIT AS A GRAND JUROR?

9      PROSPECTIVE JUROR:  THE LAST JURY I WAS ASKED TO SIT

10  ON, I GOT EXCUSED BECAUSE OF THAT REASON.

11      THE COURT:  YOU SAID YOU COULDN'T DO IT?  YOUR

12  SENTIMENTS ARE SO STRONG THAT THEY WOULD IMPAIR YOUR

13  OBJECTIVITY ABOUT DRUG CASES?

14      PROSPECTIVE JUROR:  I THINK RAPISTS AND MURDERERS

15  OUGHT TO GO TO JAIL, NOT PEOPLE USING DRUGS.

16      THE COURT:  I THINK RAPISTS AND MURDERERS OUGHT TO

17  GO TO JAIL, TOO.  IT'S NOT FOR ME AS A JUDGE TO SAY WHAT THE

18  LAW IS.  WE ELECT LEGISLATORS TO DO THAT.  WE'RE SORT OF AT

19  THE END OF THE PIPE ON THAT.  WE'RE CHARGED WITH ENFORCING THE

20  LAWS THAT CONGRESS GIVES US.

21      I CAN TELL YOU SOMETIMES I DON'T AGREE WITH SOME OF

22  THE LEGAL DECISIONS THAT ARE INDICATED THAT I HAVE TO MAKE.

23  BUT MY ALTERNATIVE IS TO VOTE FOR SOMEONE DIFFERENT, VOTE FOR

24  SOMEONE THAT SUPPORTS THE POLICIES I SUPPORT AND GET THE LAW

25  CHANGED.  IT'S NOT FOR ME TO SAY, "WELL, I DON'T LIKE IT.  SO

27

1   I'M NOT GOING TO FOLLOW IT HERE."

2          YOU'D HAVE A SIMILAR OBLIGATION AS A GRAND JUROR

3   EVEN THOUGH YOU MIGHT HAVE TO GRIT YOUR TEETH ON SOME CASES.

4   PHILOSOPHICALLY, IF YOU WERE A MEMBER OF CONGRESS, YOU'D VOTE

5   AGAINST, FOR EXAMPLE, CRIMINALIZING MARIJUANA.  I DON'T KNOW

6   IF THAT'S IT, BUT YOU'D VOTE AGAINST CRIMINALIZING SOME DRUGS.

7          THAT'S NOT WHAT YOUR PREROGATIVE IS HERE.  YOUR

8   PREROGATIVE INSTEAD IS TO ACT LIKE A JUDGE AND TO SAY, "ALL

9   RIGHT.  THIS IS WHAT I'VE GOT TO DEAL WITH OBJECTIVELY.  DOES

10  IT SEEM TO ME THAT A CRIME WAS COMMITTED?  YES.  DOES IT SEEM

11  TO ME THAT THIS PERSON'S INVOLVED?  IT DOES."  AND THEN YOUR

12  OBLIGATION, IF YOU FIND THOSE THINGS TO BE TRUE, WOULD BE TO

13  VOTE IN FAVOR OF THE CASE GOING FORWARD.

14          I CAN UNDERSTAND IF YOU TELL ME "LOOK, I GET ALL

15  THAT, BUT I JUST CAN'T DO IT OR I WOULDN'T DO IT."  I DON'T

16  KNOW WHAT YOUR FRAME OF MIND IS.  YOU HAVE TO TELL ME ABOUT

17  THAT.

18          PROSPECTIVE JUROR:  I'M NOT COMFORTABLE WITH IT.

19          THE COURT:  DO YOU THINK YOU'D BE INCLINED TO LET

20  PEOPLE GO ON DRUG CASES EVEN THOUGH YOU WERE CONVINCED THERE

21  WAS PROBABLE CAUSE THEY COMMITTED A DRUG OFFENSE?

22          PROSPECTIVE JUROR:  IT WOULD DEPEND UPON THE CASE.

23          THE COURT:  IS THERE A CHANCE THAT YOU WOULD DO

24  THAT?

25          PROSPECTIVE JUROR:  YES.

COMPUTER-AIDED TRANSCRIPTION

28

1          THE COURT:  I APPRECIATE YOUR ANSWERS.  I'LL EXCUSE

2    YOU AT THIS TIME.

38

1

2

3

4

5

6

7

8

9          PROSPECTIVE JUROR:   I'M ▆▆▆▆▆▆▆.   I LIVE IN

10   ENCINITAS.  I WORK FOR AN INSURANCE COMPANY HERE IN SAN DIEGO.

11   I'M MARRIED.  MY WIFE IS A P.E. TEACHER AT A MIDDLE SCHOOL.  I

12   HAVE TWO KIDS AGE 14 AND 16.  I'VE BEEN A JUROR BEFORE

13   PROBABLY TEN YEARS AGO ON KIND OF A LOW-LEVEL CRIMINAL CASE.

14   AND IN THE NAME OF FULL DISCLOSURE, I'D PROBABLY SUGGEST I'D

15   BE THE FLIPSIDE OF SOME OF THE INDIVIDUALS WHO HAVE CONVEYED

16   THEIR CONCERNS PREVIOUSLY.  I HAVE A STRONG BIAS FOR THE U.S.

17   ATTORNEY, WHATEVER CASES THEY MIGHT BRING.  I DON'T THINK

18   THEY'RE HERE TO WASTE OUR TIME, THE COURT'S TIME, THEIR OWN

19   TIME.  I APPRECIATE THE EVIDENTIARY STANDARDS, I GUESS, MORE

20   OR LESS, AS A LAYPERSON WOULD; THAT THEY ARE CALLED UPON IN

21   ORDER TO BRING THESE CASES OR SEEK AN INDICTMENT.

22          AND THE GATEKEEPER ROLE THAT I GUESS WE'RE BEING

23   ASKED TO PLAY IS ONE THAT I'D HAVE A DIFFICULT TIME, IN ALL

24   HONESTY.  I'M PROBABLY SUGGESTING THAT THE U.S. ATTORNEY'S

25   CASE WOULD BE ONE THAT I WOULD BE WILLING TO STAND IN FRONT

1  OF; IN OTHER WORDS, PREVENT FROM GOING TO A JURY.

2  THE COURT:  IT SOMETIMES HAPPENS THAT AT THE TIME

3  THE CASE IS INITIALLY PRESENTED TO THE U.S. ATTORNEY'S OFFICE,

4  THINGS APPEAR DIFFERENTLY THAN 10 DAYS LATER, 20 DAYS LATER

5  WHEN IT'S PRESENTED TO A GRAND JURY.  THAT'S WHY THIS

6  GATEKEEPER ROLE IS VERY, VERY IMPORTANT.

7  YOU'RE NOT PART OF THE PROSECUTING ARM.  YOU'RE

8  INTENDED TO BE A BUFFER INDEPENDENT OF THE U.S. ATTORNEY'S

9  OFFICE.  AND THE REAL ROLE OF THE GRAND JURY IS TO MAKE SURE

10  THAT UNSUBSTANTIATED CHARGES DON'T GO FORWARD.

11  YOU'VE HEARD MY GENERAL COMMENTS.  YOU HAVE AN

12  APPRECIATION ABOUT HOW AN UNSUBSTANTIATED CHARGE COULD CAUSE

13  PROBLEMS FOR SOMEONE EVEN IF THEY'RE ULTIMATELY ACQUITTED.

14  YOU APPRECIATE THAT; RIGHT?

15  PROSPECTIVE JUROR:  I THINK I COULD APPRECIATE THAT,

16  YES.

17  THE COURT:  AND SO WE'RE -- LOOK, I'LL BE HONEST

18  WITH YOU.  THE GREAT MAJORITY OF THE CHARGES THAT THE GRAND

19  JURY PASSES ON THAT ARE PRESENTED BY THE U.S. ATTORNEY'S

20  OFFICE DO GO FORWARD.  MOST OF THE TIME, THE GRAND JURY PUTS

21  ITS SEAL OF APPROVAL ON THE INITIAL DECISION MADE BY THE U.S.

22  ATTORNEY.

23  OBVIOUSLY, I WOULD SCREEN SOMEBODY OUT WHO SAYS, "I

24  DON'T CARE ABOUT THE EVIDENCE.  I'M NOT GOING TO PAY ATTENTION

25  TO THE EVIDENCE.  IF THE U.S. ATTORNEY SAYS IT'S GOOD, I'M

40

1    GOING TO GO WITH THAT."  IT DIDN'T SOUND LIKE THAT'S WHAT YOU
2    WERE SAYING.  YOU WERE SAYING YOU GIVE A PRESUMPTION OF GOOD
3    FAITH TO THE U.S. ATTORNEY AND ASSUME, QUITE LOGICALLY, THAT
4    THEY'RE NOT ABOUT THE BUSINESS OF TRYING TO INDICT INNOCENT
5    PEOPLE OR PEOPLE THAT THEY BELIEVE TO BE INNOCENT OR THE
6    EVIDENCE DOESN'T SUBSTANTIATE THE CHARGES AGAINST.  THAT'S
7    WELL AND GOOD.

8         YOU MUST UNDERSTAND THAT AS A MEMBER OF THE GRAND
9    JURY, YOU'RE THE ULTIMATE ARBITER.  THEY DON'T HAVE THE
10   AUTHORITY TO HAVE A CASE GO FORWARD WITHOUT YOU AND FELLOW
11   GRAND JURORS' APPROVAL.  I WOULD WANT YOU NOT TO JUST
12   AUTOMATICALLY DEFER TO THEM OR SURRENDER THE FUNCTION AND
13   GIVER THE INDICTMENT DECISION TO THE U.S. ATTORNEY.  YOU HAVE
14   TO MAKE THAT INDEPENDENTLY.

15        YOU'RE WILLING TO DO THAT IF YOU'RE RETAINED HERE?
16        PROSPECTIVE JUROR:  I'M NOT A PERSON THAT THINKS OF
17   ANYBODY IN THE BACK OF A POLICE CAR AS NECESSARILY GUILTY, AND
18   I WOULD DO MY BEST TO GO AHEAD AND BE OBJECTIVE.  BUT AGAIN,
19   JUST IN THE NAME OF FULL DISCLOSURE, I FELT LIKE I SHOULD LET
20   YOU KNOW THAT I HAVE A VERY STRONG PRESUMPTION WITH RESPECT TO
21   ANY DEFENDANT THAT WOULD BE BROUGHT IN FRONT OF US.
22        THE COURT:  I UNDERSTAND WHAT YOU'RE SAYING.  LET ME
23   TELL YOU THE PROCESS WILL WORK MECHANICALLY.  THEY'RE GOING TO
24   CALL WITNESSES.  AND WHAT THEY'RE GOING TO ASK YOU TO DO IS
25   EVALUATE THE TESTIMONY YOU HEAR FROM WITNESSES.

COMPUTER-AIDED TRANSCRIPTION

41

1    BEFORE YOU REACH A POINT WHERE YOU VOTE ON ANY

2    INDICTMENT, THE U.S. ATTORNEY AND THE STENOGRAPHER LEAVE.  THE

3    ONLY PEOPLE LEFT WHEN THE VOTE IS TAKEN ARE THE GRAND JURORS

4    THEMSELVES.  THAT'S THE WAY THE PROCESS IS GOING TO WORK.

5    YOU'RE GOING TO HAVE TO SAY EITHER "WELL, IT HAS THE

6    RING OF TRUTH TO ME, AND I THINK IT HAPPENED THE WAY IT'S

7    BEING SUGGESTED HERE.  AT LEAST I'M CONVINCED ENOUGH TO LET

8    THE CASE GO FORWARD" OR "THINGS JUST DON'T HAPPEN LIKE THAT IN

9    MY EXPERIENCE, AND I THINK THIS SOUNDS CRAZY TO ME.  I WANT

10   EITHER MORE EVIDENCE OR I'M NOT CONVINCED BY WHAT'S BEEN

11   PRESENTED AND I'M NOT GOING TO LET IT GO FORWARD."

12   CAN YOU MAKE AN OBJECTIVE ON FACTS LIKE THE ONES

13   I'VE JUST DESCRIBED?

14   PROSPECTIVE JUROR:  I WOULD DO MY BEST TO DO THAT.

15   I CERTAINLY WOULD WANT ME SITTING ON A GRAND JURY IF I WERE A

16   DEFENDANT COMING BEFORE THIS GRAND JURY.  HAVING SAID THAT, I

17   WOULD DO MY BEST.  I HAVE TO ADMIT TO A STRONG BIAS IN FAVOR

18   OF THE U.S. ATTORNEY THAT I'M NOT SURE I COULD OVERCOME.

19   THE COURT:  ALL I'M TRYING TO GET AT IS WHETHER

20   YOU'RE GOING TO AUTOMATICALLY VOTE TO INDICT IRRESPECTIVE OF

21   THE FACTS.

22   A FEW YEARS AGO, I IMPANELED A FELLOW HERE THAT WAS

23   A SERGEANT ON THE SHERIFF'S DEPARTMENT.  AND YEARS AGO WHEN I

24   WAS A PROSECUTOR, I WORKED WITH HIM.  HE WAS ALL ABOUT

25   ARRESTING AND PROSECUTING PEOPLE.  BUT WHEN HE GOT HERE, HE

COMPUTER-AIDED TRANSCRIPTION

42

1    SAID, "LOOK, I UNDERSTAND THAT THIS IS A DIFFERENT FUNCTION.

2    I CAN PERFORM THAT FUNCTION." HE SERVED FAITHFULLY AND WELL

3    FOR A NUMBER OF -- OVER A YEAR, I THINK.  18 MONTHS, MAYBE.

4    HE EVENTUALLY GOT A PROMOTION, SO WE RELIEVED HIM FROM THE

5    GRAND JURY SERVICE.

6         BUT, YOU KNOW, HE TOOK OFF ONE HAT AND ONE UNIFORM

7    AND PUT ON A DIFFERENT HAT ON THE DAYS HE REPORTED TO THE

8    GRAND JURY.  HE WAS A POLICEMAN.  HE'D BEEN INVOLVED IN

9    PROSECUTING CASES.  BUT HE UNDERSTOOD THAT THE FUNCTION HE WAS

10   PERFORMING HERE WAS DIFFERENT, THAT IT REQUIRED HIM TO

11   INDEPENDENTLY AND OBJECTIVELY ANALYZE CASES AND ASSURED ME

12   THAT HE COULD DO THAT, THAT HE WOULD NOT AUTOMATICALLY VOTE TO

13   INDICT JUST BECAUSE THE U.S. ATTORNEY SAID SO.

14        AGAIN, I DON'T WANT TO PUT WORDS IN YOUR MOUTH.  BUT

15   I DON'T HEAR YOU SAYING THAT THAT'S THE EXTREME POSITION THAT

16   YOU HAVE.  I HEAR YOU SAYING INSTEAD THAT COMMON SENSE AND

17   YOUR EXPERIENCE TELLS YOU THE U.S. ATTORNEY'S NOT GOING TO

18   WASTE TIME ON CASES THAT LACK MERIT.  THE CONSCIENTIOUS PEOPLE

19   WHO WORK FOR THE U.S. ATTORNEY'S OFFICE AREN'T GOING TO TRY TO

20   TRUMP UP PHONY CHARGES AGAINST PEOPLE.

21        MY ANECDOTAL EXPERIENCE SUPPORTS THAT, TOO.  THAT

22   DOESN'T MEAN THAT EVERY CASE THAT COMES IN FRONT OF ME I SAY,

23   "WELL, THE U.S. ATTORNEY'S ON THIS.  THE PERSON MUST BE

24   GUILTY."  I CAN'T DO THAT.  I LOOK AT THE CASES STAND-ALONE,

25   INDEPENDENT, AND I EVALUATE THE FACTS.  I DO WHAT I'M CHARGED

COMPUTER-AIDED TRANSCRIPTION

43

1    WITH DOING, WHICH IS MAKING A DECISION BASED ON THE EVIDENCE

2    THAT'S PRESENTED.

3          SO THAT'S THE QUESTION I HAVE FOR YOU.  I CAN

4    UNDERSTAND THE DEFERENCE TO THE U.S. ATTORNEY.  AND FRANKLY, I

5    AGREE WITH THE THINGS THAT YOU'RE SAYING.  THEY MAKE SENSE TO

6    ME.  BUT AT THE END OF THE DAY, YOUR OBLIGATION IS STILL TO

7    LOOK AT THESE CASES INDEPENDENTLY AND FORM AN INDEPENDENT

8    CONSCIENTIOUS BUSINESS-LIKE JUDGMENT ON THE TWO QUESTIONS THAT

9    I'VE MENTIONED EARLIER:  DO I HAVE A REASONABLE BELIEF THAT A

10   CRIME WAS COMMITTED?  DO I HAVE A REASONABLE BELIEF THAT THE

11   PERSON TO BE CHARGED COMMITTED IT OR HELPED COMMIT IT?

12         CAN YOU DO THAT?

13         PROSPECTIVE JUROR:  AGAIN, I WOULD DO MY BEST TO DO

14   THAT.  BUT I DO BRING A VERY, VERY STRONG BIAS.  I BELIEVE

15   THAT, FOR EXAMPLE, THE U.S. ATTORNEY WOULD HAVE OTHER FACTS

16   THAT WOULD RISE TO LEVEL THAT THEY'D BE ABLE TO PRESENT TO US

17   THAT WOULD BEAR ON THE TRIAL.  I WOULD LOOK AT THE CASE AND

18   PRESUME AND BELIEVE THAT THERE ARE OTHER FACTS OUT THERE THAT

19   AREN'T PRESENTED TO US THAT WOULD ALSO BEAR ON TAKING THE CASE

20   TO TRIAL.  I'D HAVE A VERY DIFFICULT TIME.

21         THE COURT:  YOU WOULDN'T BE ABLE TO DO THAT.  WE

22   WOULDN'T WANT YOU TO SPECULATE THAT THERE'S OTHER FACTS THAT

23   HAVEN'T BEEN PRESENTED TO YOU.  YOU HAVE TO MAKE A DECISION

24   BASED ON WHAT'S BEEN PRESENTED.

25         BUT LOOK, I CAN TELL YOU I IMAGINE THERE'S PEOPLE IN

COMPUTER-AIDED TRANSCRIPTION

44

1    THE U.S. ATTORNEY'S OFFICE THAT DISAGREE WITH ONE ANOTHER

2    ABOUT THE MERITORIOUSNESS OF A CASE OR WHETHER A CASE CAN BE

3    WON AT A JURY TRIAL.

4             IS THAT RIGHT, MR. ROBINSON?

5             MR. ROBINSON:  ON OCCASION, YOUR HONOR.  NOT VERY

6    OFTEN.

7             THE COURT:  IT COMES UP EVEN IN AN OFFICE WITH

8    PEOPLE CHARGED WITH THE SAME FUNCTION.  I DON'T WANT TO BEAT

9    YOU UP ON THIS, ██████████  I'M EQUALLY CONCERNED WITH

10   SOMEBODY WHO WOULD SAY, "I'M GOING TO AUTOMATICALLY DROP THE

11   TRAP DOOR ON ANYBODY THE U.S ATTORNEY ASKS."  I WOULDN'T WANT

12   YOU TO DO THAT.  IF YOU THINK THERE'S A POSSIBILITY YOU'LL DO

13   THAT, THEN I'D BE INCLINED TO EXCUSE YOU.

14            PROSPECTIVE JUROR:  I THINK THAT THERE'S A

15   POSSIBILITY I WOULD BE INCLINED TO DO THAT.

16            THE COURT:  I'M GOING TO EXCUSE YOU, THEN.  THANK

17   YOU.  I APPRECIATE YOUR ANSWERS.

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION